T. M. GILMORE v. H. C. SWISHER et al.

No. 10522.

1. EXPERT COMPARISON OF SIGNATURES—*dispute as to signature of paper a collateral issue, letters not admissible for comparison unless genuineness conceded.* Unnecessary collateral issues, calculated to divert the attention of the jury from the substantial issues in the case, should be avoided. In an action involving the validity of a chattel mortgage claimed by the defendants to be fraudulent, where a property statement, purporting to have been signed by the mortgagors and given to a commercial agency, is offered in evidence, and the signature to it is denied, it is error to enter into an inquiry into the genuineness of letters, also purporting to have been signed by the mortgagors, to be used as a basis of comparison by experts with the signature to the property statement, where the genuineness of the signatures to the letters is not conceded.

2. CHATTEL MORTGAGE—*near relationship of parties to, does not cast on mortgagee burden of proving good faith. For valid debt, not void because mortgagee knew mortgagor's fraudulent intent as to other creditors. Mere excess of property over debt not badge of fraud.* The burden of proving fraud rests on the party alleging it. Where a mortgage was given to the plaintiff by his son and son-in-law, who were partners, and it was claimed by the defendant that the mortgage was fraudulent, it is error to charge that the near relationship of the parties affords ground for suspicion and casts on the plaintiff the burden of proving the good faith of the transaction, or, that knowledge

of, or notice to the creditor of, an intent on the part of the debtor to hinder or defraud his creditors will render the mortgage void, even if made in good faith to secure a valid debt, or that taking security on more property than is necessary to pay.the debt is a badge of fraud.

3. STATUTE OF FRAUDS—*requirement of section 3 as to change of possession does not apply to chattel mortgages.* Instructions should be applicable to the facts of the case on trial. Where the question at issue was the validity of a mortgage under which the plaintiff claimed, it was error to give the jury the first part of the third section of the Statute of Frauds, which relates only to sales of personal property, and has no application to chattel mortgages.

·Error from Osage District Court. William Thomson, Judge. Opinion filed March 5, 1898. *Reversed.*

*P. E. Gregory, Pleasant & Pleasant,* and *Robert C. Heizer,* for plaintiff in error.

*Tufts & Crowell,* for defendants in error.

ALLEN, J. The defendant, H. C. Swisher, as sheriff of Osage County, attached a stock of lumber in Overbrook, under an order of attachment issued in an action brought by William Carlisle & Co. against Gilmore & Britte. The property was afterward sold by the sheriff to satisfy judgments rendered in favor of Carlisle & Co. against Gilmore & Britte. The firm of Gilmore & Britte was composed of C. M. Gilmore, a son of the plaintiff, and W. A. Britte, a son-in-law. T. M. Gilmore brought this action against the sheriff and his bondsmen, claiming that he was in the possession of the property attached at the time of the levy, by virtue of a chattel mortgage executed to him by Gilmore & Britte to secure the payment of the sum of $3226.90. He alleged a wrongful taking and conversion of the property by the sheriff under the attachment, and asked judgment for the value of it. The defendants answered, admitting that Swisher was sheriff of Osage County and that the other defendants

were his bondsmen, and admitting the levy of the attachment, but denying that the plaintiff was the owner of, or had any lien on the attached property. The answer charged a conspiracy by the plaintiff and the defendants in the attachment suit to defraud the creditors of Gilmore & Britte, and that the mortgage under which the plaintiff claimed was without consideration and fraudulent. The case was tried to a jury, and resulted in a verdict for the defendants. The plaintiff brings the case here alleging numerous errors in the proceedings.

At the trial the defendants offered in evidence a property statement made to the R. G. Dun & Company Agency, which they claimed was made out and signed in the name of Gilmore & Britte, by W. A. Britte. Britte being called by them, testified that the signature to the statement was not his. The defendants then sought to prove by expert witnesses the genuineness of the signature, and for that purpose produced a large number of letters purporting to be signed by Gilmore & Britte, and used them as a basis of comparison by experts for the purpose of proving the genuineness of the signatures to the property statement. The signatures to these letters were not admitted to be genuine, and most of the proof with reference to their genuineness was that they were letters received by mail in the due course of business, and opinions of witnesses that they were genuine.

There is much diversity of opinion, as we remarked in *Gaunt v. Harkness*, 53 Kan. 405, 36 Pac. 739, as to rules relating to the proof of signatures by experts based on a comparison of writing. The most liberal rule requires that the writings used as a basis for comparison with the disputed signature shall be clearly proved to be genuine. Without attempting to declare a definite rule

1. Expert comparison of signatures not admissible, when.

on the subject, we are of the opinion that, in a case like this, where the writing itself to which the disputed signature is affixed is merely evidence of a collateral fact, and is offered only for the purpose of proving fraud on the part of persons not parties to the action, the signatures used as a basis of comparison should be such as are confessedly genuine. In trying the question of the genuineness of the signatures to letters offered, the jury would be taken away from the main issue and have their attention directed to a collateral matter having no bearing whatever on the case in hand. The exhibits offered, thirty-five in number, are not claimed to have any relation to the issues in the case. It was error to allow experts to give their opinions as to the genuineness of the signature to the property statement merely from a comparison with the signatures to the letters.

It is contended also that there was error in the admission of the property statement itself. If this statement was in fact made by Gilmore & Britte, it was a circumstance to be considered by the jury in determining whether they were guilty of the fraud charged. Of course, in order to affect the plaintiff, it was necessary to connect him with the fraud by other proof.

It seems to be conceded that the plaintiff had furnished his son and son-in-law substantially the amount of money represented by the note and mortgage ; but the defendants contend that whatever he had furnished them was by way of gift, and not as a loan, and that the execution of the note and mortgage but a few days prior to the levy of the attachment was the result of a scheme devised to defeat Carlisle & Co. and other creditors. T. M. Gilmore appears to have been a wealthy farmer, who advanced money to his son and son-in-law to carry on their business

at Overbrook. That the note and mortgage were executed, and the mortgage recorded prior to the levy of the attachment, are conceded facts. The plaintiff's testimony tended to show that he was in possession of the stock of lumber at and before the time the attachment was levied. The instructions to the jury were very long. It is impracticable to copy them, or even such parts as are claimed to be erroneous. The jury were told, among other things —

"That every sale or conveyance of personal property unaccompanied by an actual and continued change of of possession ·in law shall be deemed to be void as against existing or subsequent creditors, until it is shown that such sale was made in good faith and upon sufficient consideration, or if the conveyance was a mortgage until it is shown that such mortgage was executed and was forthwith filed for record in the office of the register of deeds of the county, and you are further instructed that in this case, where property alleged to have been mortgaged is retained in charge of the mortgagor, such retention is *prima facie* evidence of fraud unless you further find from the evidence that a good and valid chattel mortgage given in good faith for a good and valid consideration, was taken by the plaintiff and recorded in the office of the register of deeds of Osage county, Kansas, for the honest ·purpose of securing a *bona fide* indebtedness, and without any intention of hindering, delaying, or defrauding the creditors of Gilmore & Britte, or any other dishonest purpose in fact or law, that the evidence and these instructions might indicate."

The jury were also told that the burden was on the plaintiff to prove the good faith of the transaction; and, in effect, that the proof must be clear and convincing, and that the vendee must not only have paid a fair consideration, but must have had no knowledge of any intent on the part of the vendors to hinder or delay creditors, and that it was the duty of the plaintiff to make diligent

2. Near relationship of parties does not change burden of proof.

inquiry into the motives and purposes of the vendors; that a mortgage of all or nearly all the property of the mortgagors to a near relative, where the mortgagors take charge of the property for such relative, affords ground of suspicion, and calls for satisfactory proof of the good faith of the transaction, and if the good faith is not apparent they must find for the defendant; that if the plaintiff gave money to his son, the burden of the proof was upon the plaintiff to show that he dealt with his children as debtor and creditor; that where a creditor obtains security, for the actual amount due, on more property than is necessary to secure the debt, and the debtor has not sufficient left to enable other creditors to secure their claims, the taking of such a mortgage is a badge of fraud. All the foregoing propositions incorporated in the instructions are erroneous as applied to the case on trial.

The rule with reference to a sale of property unaccompanied by a change of possession was altogether inapplicable to this case. The plaintiff claimed as mortgagee, and was under no obligation to take possession of the property. If the defendant took possession of the property before the levy of the attachment, it was immaterial whether his mortgage was recorded or not. The retention of the possession of the mortgaged property by the mortgagors, if they did retain it, was not *prima facie* evidence of fraud. The burden of proof to show good faith did not rest on the plaintiff. Fraud is never presumed. The burden was on the defendants to establish the fraudulent character of the transactions between the plaintiff and the mortgagors. Nor would knowledge on the part of the vendee of a purpose of the mortgagors to defraud their creditors necessarily defeat or tend to defeat his mortgage. If the transaction between him and them was

3. Section 3, Statute of Frauds, does not apply to chattel mortgages.

honest, if they really owed him the debt, and gave him security for that only, their purposes in regard to the payment of their other debts could not affect his security. Nor was the plaintiff bound to inquire into the motives and purposes of the mortgagors. Although the relationship of the plaintiff to the mortgagors was a circumstance which it was proper for the jury to consider in determining the good faith or fraud connected with the mortgage, it was error to charge as a matter of law that such relationship afforded grounds for suspicion and called for satisfactory proof of good faith.

In other parts of the instructions the law applicable to the case was correctly given, though with much unnecessary repetition and elaboration. The real question at issue was whether the money which Gilmore & Britte had received from the plaintiff was a gift or a loan. If a gift, it was a fraud on the creditors to take a mortgage to secure its return. If a loan, it was a valid indebtedness, for which he, like any other creditor, might lawfully ask security for the amount actually due. It was proper to admit testimony as to all the doings of the parties bearing on the validity or invalidity of the debt, the circumstances surrounding their business career, the receipt of the money from the plaintiff, the use to which it was put, the facts connected with the execution of the note and mortgage, the possession of the property, the solvency or insolvency of the mortgagors, and all other facts indicative of the validity or invalidity of the plaintiff's claim and of his purpose in taking the mortgage and claiming the mortgaged property. If on the whole testimony it appeared that the note represented only a valid and subsisting indebtedness to the plaintiff from his son and son-in-law, and no fraudulent conduct on his part was shown, the plaintiff was entitled to re-

cover. If on the other hand it represented in whole or in any substantial part merely gifts to them, and this method was taken to prevent other creditors from resorting to the mortgaged property for the payment of their claims, the transaction would be fraudulent and the plaintiff could not recover.

For the errors pointed out, the judgment must·be reversed and the cause remanded for a new trial.