258 P.2d 1155

**FREDRICKSEN et ux. v. FULLMER.**

No. 7954.

Supreme Court of Idaho.

June 24, 1953.

Leonard O. Kingsford, Rexburg, Harley W. Gustin, Salt Lake City, Utah, for respondents.

W. Lloyd Adams and Mary Smith, Rexburg, for appellant.

KEETON, Justice.

Elizabeth Blackshaw, a resident of Rexburg, died intestate on the 13th day of September, 1949. Defendant, appellant, is the administratrix of her estate. Plaintiffs brought this action against the administratrix to compel specific performance of an alleged contract to convey certain real estate. The trial court found for plaintiffs and entered a decree for specific performance. Defendant appealed.

A writing on which the claim is based, Exhibit "A", is a carbon copy. It is claimed by plaintiffs that deceased signed the original with a carbon between the original and the copy; that the copy was re-

tained by plaintiffs and the original by the person who signed the instrument. The original, if there were one, was not produced. The instrument in question is as follows:

"June 29, 1949

"I have received the sum of Twenty five hundred twenty dollars from Albert C and Hazel Fredricksen as payment in full for my property located at 172 North 1st East, Rexburg, Idaho consisting of three room house and 100 ft corner lot. I agree to vacate this property and furnish clear title to same within six months time.

"Signed
"Elizabeth Blackshaw
"172–N–1st East
"Rexburg, Idaho"

The answer denies the execution of the instrument.

The writing, the basis of the claim, was not acknowledged, witnessed or proved in any manner provided by law. See sections 55–701, 55–703, 55–718, 55–721 and 55–722 I.C. Hence the signature, the identity of the person signing the memorandum, and the existence of the contract must be proved in their entirety, if at all, by parol evidence.

Sec. 55–718 I.C. provides:

"Proof of the execution of an instrument, when not acknowledged, may be made either:

"1. By the parties executing it, or either of them; or,

"2. By subscribing witness; or,

"3. By other witnesses in the cases hereinafter mentioned."

Sec. 55–719 I.C. provides:

"If by a subscribing witness such witness must be personally known to the officer taking the proof, to be the person whose name is subscribed to the instrument, as a witness, or must be proved to be such by the oath of a credible witness."

Sec. 55–720 I.C. provides:

"The subscribing witness must prove that the person whose name is subscribed to the instrument as a party is the person described in it, and that such person executed it, and that the witness subscribed his name thereto as a witness."

It therefore follows that when specific performance of an unacknowledged, unwitnessed and unproved contract is sought, a case is presented which requires the application of the rule that the contract itself, as well as its essential terms, must be established by clear, satisfactory and convincing evidence. Johnson v. Flatness, 70 Idaho 37, 211 P.2d 769.

The contract is alleged to have been signed in Salt Lake City, in the presence of plaintiff, Hazel Fredricksen, and her daughter, Mrs. Edith Harrington. The only direct and positive evidence in the record is the testimony of Mrs. Harrington, who testified she saw the instrument signed. She

did not know the deceased, and as far as the records show, had never seen her before; and identified the person who signed the instrument by description only. Except by the statement of the mother (plaintiff) to the daughter, the person signing the instrument was not identified.

The person signing the exhibit, claimed to have been the deceased, was described by the witness as follows:

"She was shorter than I am, and I believe weighed about one hundred, sixty pounds, she had dark hair, but it was gray, I don't remember the color of her eyes, and she was lame—I guess that is about all."

This description could be used to describe innumerable persons, and the description itself could easily have been secured subsequent to the signing of the instrument; and such a description is not a positive identification of the deceased. The witness further testified that there was paid $2,020 in currency by her mother to the person signing the instrument.

The plaintiffs sought to identify the deceased as the one who signed the writing by specimens of handwriting to show that the signature on Exhibit "A" was the signature of the deceased, and for that purpose caused to be identified Exhibit "B", a relief warrant for $35 given by Madison County to the deceased, which was endorsed and cashed. The witness, F. L. Davis, County Auditor, did not see Elizabeth Blackshaw sign the warrant, and when asked the question: "Are you at all familiar with the signature of Elizabeth Blackshaw?" answered: "Well, I don't know as I know it sufficient to identify it." In other words, the witness attempted to identify and establish the signature of Elizabeth Blackshaw on Exhibit "B" simply because the county had cashed a warrant which bore that name. When asked: "Can you say positively that that is the genuine signature without any question of a doubt, that of Elizabeth Blackshaw?" the witness answered: "No." This exhibit was offered, and over objection received in evidence as an exemplar of handwriting. Appellant assigns such ruling as error.

Section 9–412 I.C. provides:

"Whenever the genuineness of a writing is at issue, any writing admitted or proved to be genuine is competent evidence as an exemplar for the purpose of comparison with the disputed writing: * * *."

Before the exemplar, or standard of writing, by which the comparison of handwriting is to be made may be considered, its genuineness must first be established.

The decisions of the various states are far from uniform in their holdings on what must be proved to establish the genuineness of the exemplar and the extent to which the proof must go. However, it is a universal rule that before the exemplar can be considered as a standard of handwriting, the

standard itself must, in some acceptable manner, be authenticated and proved as genuine. In the instant case, the witness never saw the deceased write, nor did he see her write the exhibit offered as a standard. He was not familiar with her signature. His opinion that it was her handwriting must of necessity have been based on the fact that the warrant, Exhibit "B", was cashed by the county. Such a standard for comparison, based on no more knowledge than was shown, has been rejected in numerous decisions.

In State v. Brassfield, 33 Idaho 660, 197 P. 559, 560, a cashed check purportedly endorsed by the defendant was offered and received in evidence as a standard for comparison. This Court held:

"* * * the state cannot introduce in evidence, for use as a standard for comparison with a signature claimed to have been made by the defendant, checks which were drawn by a witness in favor of the defendant and which were subsequently returned to the witness with the purported signature of the defendant indorsed thereon, where it appears that the witness has never seen the defendant write, and that he has no knowledge of the defendant's signature other than the fact that his name purported to be indorsed on the checks when they were returned to the witness from the bank."

Citing Bane v. Gwinn, 7 Idaho 439, 63 P. 634; State v. Seymour, 10 Idaho 699, 79 P. 825; State v. Bogris, 26 Idaho 587, 144 P. 789; State v. McGuff, 104 Wash. 501, 177 P. 316; Costello v. Crowell, 133 Mass. 352.

In Mississippi Lumber & Coal Co. v. Kelly, 19 S.D. 577, 104 N.W. 265, 266, 9 Ann.Cas. 449, the Supreme Court of South Dakota said:

"The only evidence as to the checks was that they were drawn by the witness in favor of the respondent, and were subsequently returned to him with the signature of the respondent, purporting to be his, indorsed thereon; that he had never seen the respondent write, and had no knowledge of his signature other than the fact that his name purported to be indorsed upon the checks when returned to him from the bank. In the view we take of these checks, there was not sufficient proof of the genuineness of the respondent's signature thereon to warrant the court in admitting the checks in evidence as standards of comparison, and that the court was therefore right in excluding them."

The same rule was applied in State v. McGuff, 104 Wash. 501, 177 P. 316, where it was held that an opinion as to the handwriting may not be expressed unless the standard to be compared is proved by direct and positive evidence.

The general rule is that the genuineness of the signature or handwriting offered for

the purpose of furnishing a standard of comparison should be established by clear and convincing proof. In Green v. Terwilliger, C.C., 56 F. 384, the Court held:

"Where testimony is admissible as to comparison of handwriting, care should be taken that the standard of comparison is genuine. The testimony of experts should be confined to a comparison of the disputed signatures with the admitted or clearly-proven genuine signatures."

■ In Miller v. Thompson, 50 Okl. 643, 151 P. 192, where a signature was in dispute, the Court held:

"Before a witness can be permitted to testify to the signature of a written instrument, when the execution thereof is denied under oath, it must be shown: First, that such witness was present, and saw the instrument executed; or, second, that he was acquainted with the writing and signature of the party; or, third, that such witness is competent to testify to the genuineness of such signature by a comparison with other writings or signatures admitted or proven to be genuine."

See Beloit v. Green, 43 Idaho 265, 251 P. 621; Mitchell v. First National Bank, 40 Idaho 463, 234 P. 154; Gilmore v. Swisher, 59 Kan. 172, 52 P. 426; Gaunt v. Harkness, 53 Kan. 405, 36 P. 739; 6 Cyc. on Evid. 431; 32 C.J.S., Evidence, § 617, p. 467, 20 Am.Jur. 619, § 743; 7 Wigmore on Evid., 3rd Ed., 173, Sec. 1991.

We are not holding that there is no method of proving the genuineness of handwriting except by one who actually saw the person write the exemplar. Other methods of furnishing such proof are discussed in a note to University of Illinois v. Spalding, 71 N.H. 163, 51 A. 731, 62 L.R.A. 817.

There are cases holding that the exemplar to be used for comparison may, under certain circumstances, be established by presumption. 3 Wigmore on Evid., 3rd Ed., 20, Sec. 702. These authorities are not in point here.

No case has been called to our attention where the standard used for comparison was a single draft, instrument or check, which the witness did not see written, and whose only knowledge of its genuineness was that the draft, check or order was cashed in due course.

■ We therefore conclude that the genuineness of the signature endorsed on State's Exhibit "B" was not established, and it could not be used as a standard of comparison or exemplar, and the objections to its admission should have been sustained.

No other writing to be used as a standard of comparison with the signature on the disputed instrument of Elizabeth Blackshaw was offered. On Exhibit "C", offered and received in evidence, appeared the

name Elizabeth Wright, the name sometimes used by Elizabeth Blackshaw.

Testimony of a lay witness was introduced that the name "Elizabeth" was the same as appeared on Exhibit "A". No handwriting expert made a comparison between Exhibit "C" and Exhibit "A". No other exhibit as an exemplar of the handwriting of the deceased, for comparison purposes, was offered.

█ The objection to the admission in evidence of Exhibit "C" was properly overruled. The fact that the exemplar (Exhibit "C") contained only the word "Elizabeth" for comparison purposes might be considered in the weight of the testimony, but not its admissibility.

A handwriting expert compared the signature on Exhibit "A" with Exhibit "B". As the signature on Exhibit "B" was never shown to be genuine in any manner provided by law, it was improperly used as an exemplar.

We therefore have a purported contract (Exhibit "A") unacknowledged, unproved and unwitnessed. There is no positive testimony as to the identity of the person signing the contract. The only genuine writing in evidence to be used as an exemplar or standard for comparison is the name "Elizabeth", and the testimony of a lay witness (Lillian Briggs) who testified the signatures on Exhibit "A" and Exhibit "C" were the same. The witness further testified she never saw Elizabeth Wright sign the name Elizabeth Blackshaw; that she knew the deceased as Elizabeth Wright and never saw her write the name Blackshaw.

In defense of the action the administratrix offered testimony that no money of the deceased, not otherwise accounted for, was found or could be located after her death. When the deceased died, a diligent search was made of her residence and no money, not otherwise accounted for, was discovered. Further, after the property in question was purportedly sold to plaintiffs, the deceased endeavored to sell it to others, and at no time indicated, stated or acted as though there was a contract outstanding for the sale of the property in question.

██ In the trial court's analysis of the case, he declined to consider declarations and statements of deceased made subsequent to the purported sale and prior to her death, and concluded that the testimony as to what deceased said to the witnesses, and her letters, Exhibits 1 and 2, plainly evidencing the fact that she considered herself the owner of the property in question and wholly inconsistent with the sale of the same as contended by plaintiffs, should not have been admitted in evidence as being heresay, and not within any exceptions to the heresay rule.

The testimony so offered and received, and not considered by the trial court, and in effect stricken, tended to negative the plaintiffs' contention that they had bought and paid for the property. The testimony

was properly admitted and with the other evidence should have been by the trial court considered and weighed. This testimony was, in effect, ruled admissible when this case was formerly before us. See Fredricksen v. Luthy, 72 Idaho 164, 238 P. 2d 430.

At the conclusion of plaintiffs' case, defendant made a motion to strike the testimony of the witness, Edith Harrington, on the ground that the deceased, as the signer of Exhibit "A", had never been identified. The motion to strike was more of an attack on the weight of the testimony than its admissibility. While such descriptive testimony tending to identify the deceased as the signer of Exhibit "A" by description was in itself inconclusive, it was admissible, and the motion to strike was properly denied.

A jury sat in the case in an advisory capacity, and found on the issues for defendant. The court set the verdict aside and made his own conclusions, and in his analysis relied on the genuineness of the exemplar, Exhibit "B", and the description of the deceased given by the witness Edith Harrington. While the trial judge was not bound by the verdict of the jury, it does have weight in determining the question of whether or not the evidence produced by plaintiffs was clear, satisfactory and convincing.

The evidence further disclosed that plaintiffs, or neither of them, had ever been in Rexburg prior to the alleged sale, had ever seen the property, ever investigated the title, ever made inquiry about it, and did not come to Rexburg until approximately six weeks after the death of Miss Blackshaw.

The record further shows that the deceased had no property other than the home purportedly sold, and was living on charity after the purported sale of the house. She applied for and received aid from the county and others, and no money traceable to the supposed payment could be found.

Such a record cannot be said to establish the contract of sale by clear, satisfactory and convincing evidence.

Viewing the competent testimony and evidence offered in the light most favorable to plaintiffs, the record does not sustain the decree entered.

In view of the fact that the trial court in his decision received in evidence and considered Exhibit "B" as properly identified as an exemplar, and also refused to consider testimony of defense witnesses which we deem admissible and which should have been weighed, the judgment and decree of specific performance is reversed with instructions to set the same aside and grant a new trial. Costs to appellant.

PORTER, C. J., and GIVENS, TAYLOR and THOMAS, JJ., concur.