466 P.2d 573

**Beverly J. CAHILL and Laudie I. Kalousek, Plaintiffs-Respondents,**

v.

**Cyrl LOGUE and Thomas Logue, Defendants-Appellants.**

**No. 10311.**

Supreme Court of Idaho.

March 16, 1970.

Coughlan, Imhoff, Christensen & Lynch, Boise, for appellants.

Kramer, Plankey & Meehl, Twin Falls, W. Anthony Park, Boise, for appellees.

DONALDSON, Justice.

On October 28, 1965, about 7:00 P.M., while riding in an automobile, Mike Kalousek, natural son of the plaintiffs-respondents, was killed as the result of a one car accident occurring on a Boise County Road connecting Garden Valley and Lowman (5 miles east of Garden Valley). The automobile, traveling at a speed of 30-35 miles per hour went over a cliff and came to rest in a river. The driver, Cyrl Logue, did not remember any of the details of the accident. Thomas Logue is the owner of the vehicle. There was conflict in the evidence as to whether the decedent was a paying passenger or a guest.

Subsequent to trial, the jury returned a special verdict specifically finding that:

(1) the deceased, Mike Kalousek, was a paying passenger in the motor vehicle driven by the defendant, Cyrl Logue;

(2) the defendant, Cyrl Logue, was guilty of ordinary negligence;

(3) the ordinary negligence of the driver, Cyrl Logue, was a proximate cause of the accident and the death of the deceased, Mike Kalousek;

(4) the defendant, Cyrl Logue, was not guilty of gross negligence;

(5) the amount of damages suffered by the plaintiffs (parents of the deceased Mike Kalousek) was $8,000.00.

The district court entered judgment for the plaintiffs upon the special verdict and the defendants appeal from that judgment.

Appellants' main assignments of error can be reduced to the contention that the plaintiffs-respondents, parents of the deceased Mike Kalousek, failed to sustain their burden of proof with respect to the issue of whether or not the deceased was a paying passenger in the vehicle driven by the defendant at the time of the accident.[1]

The record reveals that three individuals, viz., Mike Kalousek (the deceased), Cyrl Logue, and Jesse Corn were each working on the same job for the same employer. All three resided near Garden Valley, Idaho, but worked about 27 miles away. Prior to the time that the deceased and the defendant began working on the same job neither the deceased nor Logue nor Corn knew each other. Because of this job, the three employees had to drive approximately 27 miles each way to work or a 54 mile round trip daily. Mike Kalousek, the deceased, and Jesse Corn had been sharing rides to work. Cyrl Logue, the defendant, had been riding to work with one Bob Corder, the common employer of all three. At the employer's suggestion, Cyrl Logue began to ride to work with both Kalousek and Corn. Jesse Corn testified at the trial that he and Kalousek had an informal agreement whereby the two had been trading off rides.[2] Corn further testified that he and Kalousek requested Cyrl Logue to provide his share of the transportation and Cyrl then borrowed his brother's car[3] in order to do so since Cyrl Logue didn't have a workable car of his own.

In jurisdictions having guest statutes, there is no general rule as to whether one riding in a motor vehicle under a share the ride arrangement or car pool has the status of "guest" or "paying passenger" ascribed to him. Many jurisdictions[4] have said that the issue depends on the circumstances of each case. The Idaho cases have applied this rule but have not articulated it as such. Riggs v. Roberts, 74 Idaho 473, 264 P.2d 698 (1953) sets forth certain criteria which must be met however in order to show that one is a paying passenger and not a guest, viz.; (1) there must be contributed by the passenger to the driver of the car something substantial and of worth to the driver (where each drives his automobile for alternate periods and transports the other, there is sufficient consideration to make each individual a passenger and not a guest when riding in the other's vehicle[5]); (2) there must be a

1. "49–1401. Liability of motor owner to guest.—No person transported by the owner or operator of a motor vehicle as his guest without payment for such transportation shall have a cause for damages against such owner or operator for injuries, death or loss, in case of accident, unless such accident shall have been intentional on the part of the said owner or operator or caused by his intoxication or gross negligence."

2. "Q. How often did Mike take you up to the job?
A. I don't know, he would take his for a week or two and I would take mine for awhile.
Q. Would you take yours as often as he took his?
A. Just about the same."

3. "Q. Did Cyrl borrow the Scout at the request of Mike?
A. It was at the request of both of us so that one person would not be driving one vehicle all the time."

4. Storey v. Corkren, 275 Ala. 524, 156 So.2d 484 (1963); Simms v. Tingle, 232 Ark. 239, 335 S.W.2d 449 (1960); Livingston v. Schreckengost, 255 Iowa 1102, 125 N.W.2d 126 (1963); Sparks v. Getz, 170 Kan. 287, 225 P.2d 106 (1950); Campbell v. Marquis, 112 Ohio App. 50, 175 N.E.2d 106 (1960).

5. See Peccolo v. City of Los Angeles, 8 Cal.2d 532, 66 P.2d 651 (1937); Coerver v. Habb, 23 Wash.2d 481, 161 P.2d 194, 161 A.L.R. 909 (1945); Kelly v. Simoutis, 90 N.H. 87, 4 A.2d 868 (1939).

mutual understanding reasonably clear to both the rider and the driver before the trip is undertaken, that the rider's relationship to the driver is that of a passenger and not a mere guest. This second requirement was announced in Riggs v. Roberts, *supra*, but was not explained or interpreted therein and is in need of explication. What is essential is not mere words but a factual situation which reveals that before the trip was undertaken there existed mutual understanding, reasonably clear to both the rider and the driver, that each party was not motivated by social amenities, but rather by purely economic advantage. These two criteria have been adhered to by this Court in the recent cases of Petersen v. Parry, 92 Idaho 647, 448 P.2d 653 (1968) and Hamilton v. Miller, 91 Idaho 27, 415 P.2d 313 (1966). Applying them to the case at bar we do not believe the jury was in error in determining that Mike Kalousek was not a "guest" but rather a "paying passenger" within the contextual significance of the Idaho guest statute.[6]

A careful review of the record indicates substantial and competent evidence tending to show that the relationship between the deceased and Cyrl Logue met the two requirements. The first, i. e., contribution by passenger to driver of something of substantial worth, is satisfied since it is readily evident from the record that being saved the expense of a 54 mile automobile ride each day is "something of substantial worth." The second requirement, i. e., a factual situation revealing that before the trip was undertaken, there existed a mutual understanding, reasonably clear to both the rider and the driver, that each party was not motivated by social amenities, but rather by purely economic advantage, is satisfied since the testimony of Jesse Corn indicates the existence of a tripartite agreement between Cyrl Logue, Jesse Corn and Mike Kalousek:

"Q Now did you and Mike and Cyrl ever have any discussion about your transportation back and forth from work?

A Well, we went over and talked to Cyrl.

Q Do you know whether or not you three fellows arrived at any decision that night?

A Well, we decided that it was only fair that one person take his as long as he wanted to and then if somebody else wanted to drive to kind of fill in, or something, that he could, so that one person would not always have to take his vehicle.

Q This was a decision that was made that night?

A Yes.

Q And you carried that into effect then, I take it?

A Yes."

We note that certain jurisdictions consider the existence of a formal agreement between the parties as a factor to be considered when determining whether an individual is a "guest" or "paying passenger."[7] However we prefer to adhere to the rule enunciated by the Oregon Supreme Court in Albrecht v. Safeway Stores, Inc., 159 Or. 331, 80 P.2d 62 (1938).

"It is not necessary to prove a legal contractual obligation in order to remove plaintiff from the status of a guest." 159 Or. 331 at 340, 80 P.2d 62 at 66 (1938).

We deem it of little consequence whether the contribution of something substantial and of worth is made by express contract, informal arrangement or custom. See Dirksmeyer v. Barnes, 2 Ill.App.2d 496, 119 N.E.2d 813 (1954). In the case at bar, the record reveals that an informal agreement was assented to by three co-workers and this is sufficient to satisfy the legal requirement.

Jurisdictions where guest statutes have been enacted regard the relationship between the driver and the party transported

6. See footnote 1.

7. Fountain v. Tidwell, 92 Ga.App. 199, 88 S.E.2d 486 (1955).

as a significant factor when deciding the issue of "guest" versus "paying passenger." If the relationship between the motorist and the party transported is that of strangers or business associates, there is a tendency for the courts to find "paying passenger status." However where there is a close family relationship between the motorist and the one transported, the tendency is to ascribe the status of "guest" to the transportee.[8] Since the record clearly indicates as testified to by Cyrl Logue that neither Logue nor the deceased were acquainted before they both began to work at the same job,[9] the motivation for the association and transportation arrangement of the two men was obviously business oriented, since they were co-workers and the two were "business associates" or "strangers" as opposed to "friends" or "family."[10] See also Buffat v. Schnuckle, 79 Idaho 314 at 327, 316 P.2d 887 at 892 (1957).

Appellants contend that instruction no. 14[11] given by the trial court did not adequately advise the jury of the plaintiffs' burden in establishing a paying passenger relationship in that the instruction erroneously defined the elements necessary to constitute "paying passenger" under Idaho law. Appellants specifically complain of the omission of the trial court to include in the instruction that there was a "mutual understanding, reasonably clear to both the rider and the driver, before the trip was undertaken that the deceased's relationship was that of paying passenger and not mere guest." The phrase "mutual understanding" was first used by this Court in Riggs v. Roberts, supra. The authority cited for that proposition is a 1942 Ohio case, Sprenger v. Braker, 71 Ohio App. 349, 49 N.E.2d 958 (1942). However a careful reading of that case indicates that the phrase "mutual understanding" was nowhere used in the opinion and therefore the case provides no insight as to the meaning of the phrase. The phrase as used in Riggs v. Roberts, *supra*, was used in context with the status of the parties at the commencement of the trip since it quotes,

"What was intended originally as a gratuity, cannot subsequently be made the basis of an obligation." Hasbrook v. Wingate, 152 Ohio St. 50, 87 N.E.2d 87, at page 91, 10 A.L.R.2d 1342.

In the case at bar, where there is no evidence of a formal agreement an instruction given the jury relating to the notion of "mutual understanding" would have been error. The use of the words "mutual understanding" in the instruction could have easily confused the jury or led them to believe that some sort of formal contract or written agreement was necessary in order for them to find "paying passenger" status. As heretofore stated, this is not required. The instruction is replete with the concept of consideration and mutual consent arrived at prior to the commencement of the

8. See Miller v. Fairley, 141 Ohio St. 327, 48 N.E.2d 217 (1943); Hasbrook v. Wingate, 152 Ohio St. 50, 87 N.E.2d 87, 10 A.L.R.2d 1342 (1949); Annot. 10 A.L.R.3d 1087 (1966).

9. "Q. Did you know him only during the period of time you and he worked together? A. Yes."

10. Bond v. Sharp, 325 Mich. 460, 39 N.W. 2d 37 (1949).

11. Instruction No. 14.
"When I use the words 'paying passenger' in these instructions I mean a person riding in the car of another for compensation.
Where the driver receives a tangible benefit, monetary or otherwise, which is a motivating influence for furnishing the rider's transportation, the rider is a paying passenger.
The compensation required to make a person a paying passenger need not be in money and need not be paid directly by such person. If, as the chief inducement for the transportation, any benefit is conferred on the driver, which has a then present pecuniary value although that value may never ripen into material gain, the person transported is a paying passenger.
In other words, the driver must be actuated by a benefit of substantial value, not mere courtesy or kindness or recognition of the amenities or friendship."

trip which are the prerequisites necessary to establish a "paying passenger" status.

Appellant also asserts as error that the trial court prevented the defendant, Cyrl Logue, and the witness, Jesse Corn, from explaining their understanding of the agreement between the deceased, Mike Kalousek, and the defendant which allegedly gave rise to the paying passenger relationship. Specifically objected to is the failure of the district court to permit Cyrl Logue to explain that "in his own mind" he didn't *think* he had a binding obligation to transport the deceased, but rather that transportation was provided because of a friendly arrangement. Also objected to is the failure of the trial court to allow Jesse Corn to testify as to what his understanding of the arrangement was. However as we have heretofore stated, the existence or non-existence of the paying passenger relationship depends on facts and circumstances rather than self-serving statements of conclusions of law. Furthermore the subjective intentions of Cyrl Logue and Jesse Corn are of no consequence where there are objective criteria which disclose the existence of an agreement, informal as it may be.

" * * * it is now a settled principle of the law of contract that the undisclosed intentions of the parties are, in the absence of mistake, fraud, etc., immaterial; and that the outward manifestation or expression of assent is controlling. This is the 'objective' standard, established by the modern decisions and approved by authoritative writers."

12. "13–219. What may be reviewed on appeal.—Upon an appeal from a judgment the court may review the verdict or decision and any intermediate order or decision, if excepted to, which involves the merits or necessarily affects the

Brant v. California Dairies, 4 Cal.2d 128 at 133, 48 P.2d 13 at 16 (1935) ; Waverly Productions v. R. K. O., 217 Cal.App.2d 721, 32 Cal.Rptr. 73 (1963).

"In some branches of the law, especially in the criminal law, a person's secret intent is important. In the formation of contracts, it was long ago settled that secret intent was immaterial, only overt acts being considered * * *." 1 Williston, Contracts, § 22, 3rd Ed. (1957).

The facts and circumstances in the case at bar, notwithstanding the subjective intent and ideas lodged in the mind of Cyrl Logue and Jesse Corn, are the factors which are determinative of the existence or non-existence of a mutual understanding.

Furthermore where a jury's verdict is supported by substantial and competent though conflicting evidence, a judgment based thereon cannot be set aside on appeal. I.C. § 13–219,[12] Cournyer v. Follett, 85 Idaho 119, 376 P.2d 707 (1962) ; Casey v. Nampa & Meridian Irrigation District, 85 Idaho 299, 379 P.2d 409 (1963). And on appeal, evidence must be viewed most favorably toward respondent and against appellant. Fredrickson v. Fullmer, 74 Idaho 164, 258 P.2d 1155, 41 A.L.R.2d 567 (1953) ; Conley v. Amalgamated Sugar Co., 74 Idaho 416, 263 P.2d 705 (1953). For the foregoing reasons the judgment of the district court is hereby affirmed.

Costs to respondents.

McFADDEN, C. J., and McQUADE, SHEPARD and SPEAR, JJ., concur.

judgment, except a decision or order from which an appeal might have been taken: provided, that whenever there is substantial evidence to support a verdict the same shall not be set aside."