486 P.2d 278

Elmer HOLMGREN and Joseph L. Snarr,
Plaintiffs-Respondents,

v.

ROGERS BROTHERS COMPANY,
Defendant-Appellant.

No. 10725.

Supreme Court of Idaho.

June 25, 1971.

Albaugh, Bloem, Smith & Pike, Idaho Falls, for defendant-appellant.

Bowen & Bowen, Idaho Falls, for plaintiffs-respondents.

SHEPARD, Justice.

This case arises as a result of a contract for the purchase and sale of a crop of potatoes in which the purchaser was granted the right to direct certain activities in connection with the growing and harvesting of the potatoes.

Rogers Brothers Company, hereinafter appellant, was and is a dealer in produce. Snarr, hereinafter respondent, was a farmer in the Twin Falls area and Holmgren is the "silent partner" of Snarr. In early 1967, appellant signed a contract with respondent for the raising of a crop of potatoes by respondent in Twin Falls County. The stated contract price was $1.40 per cwt., but with a price reduction should the potatoes, or any load thereof, fail to contain 40 per cent U.S. No. 1 Size A potatoes. Appellant had the option to rescind and cancel the contract should this 40 per cent figure not be met.

By an attachment to the contract, it was stated:

"Time of delivery is a consideration in this contract and the Company [appellant] will require that the Crop contracted be cultivated and grown in a manner that will provide for maturity of the potatoes by September 1, 1967. Buyer may at his option require the Seller to Spray-kill the vines on or after August 15th if Buyer determines it necessary to accomplish maturity.

"Scheduling of harvest and delivery of crop shall be at the sole direction of the Buyer or his authorized representative."

Spray-kill of vines is a measure whereby an herbicide is applied to and kills the aboveground vines of the potatoes. The potato tuber apparently continues to grow for about two weeks after this spraying and then ceases to mature further. Sometime in late August, appellant ordered respondent to spray-kill the potato vines.

Irrigation and rainfall combined to super-saturate the soil. Appellant later ordered the harvesting of the potatoes to begin and nine loads thereof were dug. Due to the saturation of the soil, a very large amount of mud stuck to the potatoes when they were dug. When those nine loads were graded, the 40 per cent mark was not reached on seven of the nine loads. Those seven loads were taken to another produce dealer and sold for $1.00 per cwt.

The respondent contended that the large amounts of mud and the earlier spray-killing of the vines prevented the potatoes from reaching sufficient maturity to satisfy the grade requirements. Respondent further contended that the rejection of the loads for not meeting the 40 per cent mark was the result of the above two factors. The respondent further contended that those factors were within the control and responsibility of the appellant. The contentions of the respondent are supported by the evidence, could have been and evidently were accepted by the jury as the explanation for the failure of the loads to reach the 40 per cent mark.

Thereafter, respondent and his silent partner were able to sell the remainder of the crop only at a reduced price and initiated this action for their damages. Upon trial to the jury, a verdict in the amount of $38,460.95 was returned, and judgment entered thereon. This appeal resulted.

Appellant first contends that its orders regarding the spray-killing of the vines and the time and method of harvesting were all within its authority as prescribed by the terms of the contract and therefore could not constitute a breach of the contract. It is clear, however, that the giving of the authority to order certain acts does not grant unbridled license to order acts without regard to their effects. As stated

in Kuitems, et al v. Covell, et al, 104 Cal. App.2d 482, 231 P.2d 552, 554 (1951), quoting from 38 Am.Jur. 662, § 20:

" 'Accompanying every contract is a common-law duty to perform with care, skill, reasonable expedience, and faithfulness the thing agreed to be done, and a negligent failure to observe any of these conditions is a tort, as well as a breach of the contract.' The rule which imposes this duty of universal application as to all persons who by contract undertake professional or other business engagements requiring the exercise of care, skill and knowledge; the obligation is implied by law and need not be stated in the agreement."

"A 'condition' whether it be 'precedent' or 'subsequent' may be either express, implied in fact, or constructive. [citations omitted]" Ross v. Harding, 64 Wash.2d 231, 391 P.2d 526, 530 (1964). " 'Equity does not require that all the terms and conditions of the proposed agreement be set forth in the contract.' [citation omitted] The usual and reasonable conditions of such a contract are, in contemplation of the parties, a part of their agreement [citation omitted]." Nadell & Co. v. Grasso, 175 Cal.App.2d 420, 346 P.2d 505, 508 (1959), and

"* * * in the interpretation of an unambiguous contract, conditions may be read into it which are necessary to carry out the expressed intentions of the parties and which they clearly took for granted without their being stated." Sharpe v. Arabian American Oil Co., 111 Cal.App.2d 99, 244 P.2d 83, 87 (1952).

Appellant assigns error to an instruction of the trial court, which stated:

"You are instructed that once the defendant [appellant] exercised its option to require the plaintiffs to spray-kill the potato vines, the contract impliedly required the defendant to order the potato vines killed at a proper and reasonable time considering the terms of the contract and the maturity, grade, quantity, and marketability under the terms of the contract. If you find that the defendant breached such implied duty and obligation, and if you further find that such breach was a proximate cause of damage to the potato crop, and if you further find that there was no mutual rescission by the parties of their purchase and sale contract, then you are at liberty to determine the amount of damages proximately caused by the breach."

■ In view of *Kuitems*, the instruction of the trial court was not error and properly stated the law as to a prerequisite for a finding of breach of contract by appellant.

■ On appeal the evidence must be viewed most favorably toward the respondents and against the appellant. Cahill v. Logue, 93 Idaho 533, 466 P.2d 573 (1970) ; I.C. § 13–219. The credibility of witnesses and the accuracy of their statements is within the province and for the determination of the jury. Harper v. Johannesen, 84 Idaho 278, 371 P.2d 842 (1962). The evidence of the respondent furnished ample basis for the jury to find a breach of the contract by appellant. There was therefore substantial and competent evidence to support a finding of breach of contract and even though that evidence may have been controverted the judgment must stand. Cahill v. Logue, supra; I.C. § 13–219. The jury could, and evidently did, believe that the breach of the contract by appellant led to the failure of the crop to meet contractual standards. There is substantial and competent, although controverted, evidence to support the amount of damages awarded by the jury.

■ Appellant also assigns as error the computation of damages on the basis of 350 acres. Appellant contends that only 300 acres were in fact covered under the contract. The evidence does not reveal that the acreage was as clearly set forth as is contended by appellant. A question of fact was therefore presented for the jury. We note further that the damages given by

the jury verdict were not in the maximum amount which could have been received or awarded even assuming that the 300 acre contention of the ·appellant was correct. As stated in Bratton v. Slininger, 93 Idaho 248, 460 P.2d 383, 388, (1969) :

> "The amount of damages is a question of fact which is for the jury in the first instance and secondly for the trial judge on a motion for a new trial. [citations omitted] The power of this court over excessive damages 'exists only when the facts are such that the excess appears as a matter of law, or is such as to suggest at first blush, passion, prejudice, or corruption on the part of the jury.' "

The record discloses that none of the said criteria exist herein.

■ Appellant also contends there was a mutual rescission of the contract. That question was before the court and jury and there was ample evidence to support a finding of fraud on the part of the appellant in the procurement of the so-called "Mutual Rescission." The verdict of the jury in that regard is again supported by substantial and competent evidence, and therefore must be affirmed.

■ Appellant lastly contends that no damage was done to the respondent since, had the potatoes passed under the contract, with its provisions for failure to meet grade, respondents would have thereby received an amount which was in fact less than they in actuality did receive by selling the potatoes elsewhere. This contention disregards the fact of the breach of the contract causing the failure to meet grade. Appellant cannot validly assert that when it caused the failure to meet grade, the respondents are barred from seeking damages.

The judgment is affirmed. Costs to respondents.

McQUADE, C. J., and McFADDEN, DONALDSON .and SPEAR, JJ.; concur.