498 P.2d 345

**Audrey VON LINDERN et al., Plaintiffs-Respondents and Cross-Appellants,**

v.

**The UNION PACIFIC RAILROAD COMPANY, a corporation, and C. L. Hegstrom, Defendants-Appellants and Cross-Respondents.**

No. 10921.

Supreme Court of Idaho.

June 6, 1972.

Rehearing Denied July 10, 1972.

U. A. Miner, Salt Lake City, Utah, and E. C. Phoenix, F. L. Ringe and D. J. Manning, Pocatello, for defendants-appellants.

Rayborn, Rayborn, Webb & Pike, Twin Falls, for plaintiffs-respondents.

SHEPARD, Justice.

This action results from a collision between an automobile driven by Warren Von Lindern, who was killed in the accident, and a Union Pacific train in which defendant C. L. Hegstrom was the engineer. Following trial, a jury returned a verdict in favor of plaintiffs in the amount

of $51,495. Defendants appeal from the verdict and the judgment entered thereon, and plaintiffs cross-appeal.

The essential issues in this case may be reduced to whether there was negligence on the part of the defendants and whether there was contributory negligence on the part of the deceased driver, Von Lindern. The evidence at the trial was in direct conflict as to when, if ever, the locomotive whistle was sounded and the lapse of time between the sounding of the whistle and the collision. There was ample testimony, albeit contradicted, to support a finding by the jury that the locomotive whistle was sounded contemporaneously with or only very shortly before the actual collision. There was testimony by members of the train crew that they had seen the deceased's vehicle approaching the intersection for some period of time prior to the collision. From these facts the jury could have found common law negligence on the part of the defendants. Judd v. Oregon Short Line Railroad Company, 55 Idaho 461, 44 P.2d 291 (1935). This court would be required to sustain that finding as based on competent and substantial, although conflicting, evidence. Rosenberg v. Toetly, 94 Idaho 413, 489 P.2d 446 (1971).

This case also involves questions of whether defendants were guilty of negligence per se as a result of alleged violation of a statutory duty. The intersection involved herein was the point where a dirt road or lane crossed the railroad tracks. The railroad had maintained and periodically replaced the planking at the crossing. No warning signs or devices existed. The road led from an east-west paved highway in a southerly direction across fields to the north side of the railroad tracks. The road then intersected with the east-west railroad and then continued further southerly through more fields. Corn harvesting was being conducted in the fields and trucks were loading from the harvesters, leaving the fields periodically and crossing the railroad. The deceased, Von Lindern, was driving a sedan automobile from the fields and approached the railroad tracks

from the south. At the same time, a truck loaded with corn approached the tracks from the north. Von Lindern waited on the side of the road until the truck passed and then proceeded onto the railroad tracks where he was struck by the train.

Appellants contend that the trial court erred in submitting to the jury the question of whether defendants-appellants were guilty of negligence as a matter of law.

The appellants assert that the trial court committed error in giving an instruction based on I.C. § 62–412. That statute provides in pertinent part:

"A bell * * * must be placed on each locomotive engine, and be rung at a distance of at least eighty rods from the place where the railroad crosses any street, road or highway, and be kept ringing until it has crossed such street, road or highway; or an adequate steam, air, electric or other similar whistle must be attached, and be sounded, except in cities, at the like distance, and be kept sounding at intervals until it has crossed the same, under a penalty of $100.00 for every neglect, to be paid by the corporation operating the railroad * * *. The corporation is also liable for all damages sustained by any person, and caused by its locomotives, trains or cars, when the provisions of this section are not complied with."

The instruction then stated:

"If you should find and believe from the evidence that the defendant railroad conducted themselves in violation of Section 62–412 as quoted to you, that is if you find that they did not sound a whistle or bell prior to the collision in the fashion required by law, then you are instructed that the conduct of the defendant railroad in this failing to sound a whistle as required by law is negligence as a matter of law."

The next instruction of the court stated:

"You are instructed that the words 'any street, road or highway' contained in the statute referred to in the preceding in-

struction is applicable to any such areas and is not confined to public streets, roads or highways. Thusly, if you should find from the evidence that the road used by the deceased which intersects with the railroad tracks of the defendant corporation was a private road, still the requirements of the statute cited would be applicable to the crossing."

Defendants contend that I.C. § 62–412 does not apply to private roads but only to public roads, streets and highways and that therefore the giving of the above instructions was erroneous and prejudicial.

Defendants-appellants urge us to follow certain cases such as Louisville & Nashville Ry. Co. v. Wallace, 302 S.W.2d 561 (Ky.App.1956) but we note that the Idaho statute is dissimilar to the statutes of that jurisdiction. We further note that I.C. § 62–412 is largely patterned on the California statute. Allan v. Oregon Short Line Railroad Company, 60 Idaho 267, 90 P.2d 707 (1938). The question as to whether the statutory language is applicable to "a private road" has been considered by the California Supreme Court in Emmolo v. Southern Pacific Company, 91 Cal.App.2d 87, 204 P.2d 427 (1949) and we deem such decision relevant and persuasive in the case at bar.

In *Emmolo* the collision between the train and the vehicle occurred on a private road or lane leading between two farms. The court therein stated:

"Defendants' argument in support of their second contention is that section 486 of the Civil Code [identical to the provisions of I.C. § 62–412] applies only to public roads and not private roads such as the one involved in the present case which admittedly only went to the two farms previously mentioned. The pertinent portion of said section provides for the sounding under specified conditions of certain named warning devices for 'a distance of at least eighty rods from the place where the railroad crosses *any street, road, or highway* * * *' (Italics ours) * * * How-

ever, a reasonable construction of a statute is to be preferred and effect is to be given to all of its parts, including all the words therein contained which are to be interpreted according to their common acceptation * * *. The word 'any' is defined in part as 'Indicating a person, thing, etc., as one selected without restriction or limitation of choice, with the implication that every one is open to selection without exception; one, no matter what one; all, taken distributively; every; * * *.' * * *. Thus the use of the word 'any' in the statute negatives the intention that the statute is restricted to public roads. Such an interpretation is consistent with the few cases that bear on the question." 204 P. 2d at 429.

This court has considered the provisions of I.C. § 62–412 in many cases; however, in all but one of those cases a collision has taken place at the junction of a public highway or street with a railroad track. *See*: Yearout v. Chicago, Milwaukee, St. Paul & Pacific R. Co., 82 Idaho 466, 354 P.2d 759 (1960); Ralph v. Union Pacific Railroad Company, 82 Idaho 240, 351 P.2d 464 (1960); Ineas v. Union Pac. R. Co., 72 Idaho 390, 241 P.2d 1178 (1952); Hobbs v. Union Pacific R. R. Co., 62 Idaho 58, 108 P.2d 841 (1941); Dept. of Finance v. Union Pac. R. R. Co., 61 Idaho 484, 104 P.2d 1110 (1940); Allan v. Oregon Short Line R. Co., 60 Idaho 267, 90 P.2d 707 (1938).

Judd v. Oregon Short Line Railroad, *supra,* is the only case drawn to our attention in which the collision occurred at the junction of a private road and a railroad track. In *Judd,* however, the public road v. private road aspect of I.C. § 62–412 was not involved or discussed, since the court in that case affirmed the jury verdict on the basis of common law negligence. We therefore deem this question as being one of first impression in its jurisdiction.

■ In all of the above mentioned cases, and in cases cited therein, it has been stated without variance that the failure of a railroad to comply with the requirements

of I.C. § 62–412 constitutes negligence per se. Unless we disregard the express language of the statute requiring the sounding of a warning when the railroad crosses "any * * * road," we must conclude that the defendants herein could have been found guilty of negligence per se.

In other statutes "street" and "highway" are used in such manners as to reasonably suggest that the connotation "street" or "highway" includes the modifying term "public." However, we find no such statutory utilization of the term "road," nor do the definitions of "road" as found in the various legal and lay dictionaries offer any showing that the connotation of "road" includes the modifying phrase "public." We therefore are persuaded that the word "road" used in our statute includes private roads. Emmolo v. Southern Pacific Company, *supra*. It may well be as appellant suggests that such construction of the statute may impose severe operational and liability burdens upon railroads, but such arguments go to the wisdom of the legislation, which is solely a legislative policy determination.

■ We next turn to the question of whether the plaintiff sustained its burden of proof by showing non-compliance with the provisions of I.C. § 62–412. The record herein indicates a sharp conflict in the testimony as to whether a whistle was sounded at any appreciable distance from the intersection. As heretofore stated, there was testimony to the effect that the whistle was sounded almost contemporaneously with the collision. The employees of the Railroad testified that a whistle had been sounded some distance prior to the intersection, but that distance was not at all precisely defined. Therefore, if the verdict of the jury was based on a finding of negligence per se, because of violation of the statute, that finding is supported by the evidence albeit such evidence was conflicting and controverted. Reardon v. Union Pacific Railroad, 93 Idaho 833, 475 P.2d 370 (1970); Cahill v. Logue, 93 Idaho 533, 466 P.2d 573 (1970).

Turning to the question of the existence of common law negligence on the part of the defendant as discussed in Judd v. Oregon Short Line Railroad, *supra,* we note there was testimony, again contradicted, from which the jury could have concluded that the whistle was not blown in sufficient time to give actual warning and from which it also could have concluded that such negligence was a proximate cause of the accident.

Either type of negligence, i. e., statutory or common law negligence, would independently support a jury finding of negligence on the part of the defendants. Although differing standards of proof are required under the two theories, both such standards of proof were met. Since both theories of negligence support the verdict of the jury, such verdict will not be set aside.

■ Defendants-appellants' final assignment of error relates to alleged contributory negligence on the part of the deceased driver. The thrust of defendants-appellants' argument in this area is that the deceased driver was charged with seeing what was plainly to be seen and that the approaching locomotive and train could and should have been seen by the deceased driver in time to avoid the accident. To that end extensive evidence was introduced by the defendants purporting to show the distances at which a locomotive could be seen from varying points along the road on which the deceased approached the intersection. Engineer transit sightings were taken to determine such visibility and such distances. Numerous photographs were introduced by both plaintiffs and defendants showing the intersection, the road and the railroad tracks from nearly all conceivable angles and directions. Several witnesses gave direct testimony of their ability to see or not to see along the railroad tracks.

Such evidence presented conflicts which were for resolution by the jury. We may not override nor second guess the jury resolution of such conflicts unless there was

no substantial and competent evidence to sustain the jury's decision.

Some of the photographs introduced in evidence indicate some few obstructions which might detract from the ability to see an approaching train. Others, while not showing any substantial impairment to vision, might be construed to indicate that a train would tend to blend into the background. Those photographs were open to interpretation by the jury to the extent that inferences drawn therefrom were logical. Thompson v. Fairchild, 93 Idaho 584, 468 P.2d 316 (1970). As above mentioned, certain transit sightings were taken and that testimony was before the jury. We note, however, that what may be observed through a transit has no necessary relevance to what a normal person riding in a motor vehicle might observe. A transit magnifies as well as focuses attention upon one very precise spot. Also, one taking sights through a transit is presumably at his leisure and aware of what he is looking for and approximately where the object will be. On the other hand, the driver of a motor vehicle must operate the vehicle, be on the outlook for other vehicles on the same roadway and be concerned with obstructions and distractions to the operation of the vehicle as well as surveying the railroad tracks in both directions. It was for the jury to balance and weigh all of these considerations and resolve the weight to be given the visibility through the utilization of a transit as against the testimony of those who testified to ordinary visibility. We and the jury are further aware that a train travelling between 50 and 60 miles per hour will cover a distance of 100 ft. in only a little over one second.

We further note that the jury could have, and probably did, give substantial importance to the testimony of a witness who, on the day following the accident, drove a vehicle across the same intersection. Because of the fatal accident on the next preceding day, he, with a passenger in his vehicle, approached the tracks, stopped, looked and listened with extra care, and then drove rapidly across the intersection. Almost immediately a train appeared a relatively short distance away. Both the driver and his passenger had been sure that no train had been approaching.

We believe that an obvious jury question was presented and we may override the jury resolution of such conflicts in testimony only if no substantial and competent evidence supports such finding. While we might disagree with the jury's resolution of the conflict and its conclusion, it was within the discretion of the jury and will not be overturned on appeal. Cahill v. Logue, supra; Reardon v. Union Pac. R. R., supra.

"We are not unmindful of the tendencies of juries to find against corporations on slight evidence but, at the same time, we do not feel that it is within the province of the court to upset verdicts of juries merely because we might not agree with their findings. It is only where the evidence is clearly and wholly against the finding of the jury or where some essential fact necessary to establish liability has not been proven, that this court can interfere." Nelson v. Inland Motor Freight Co., 60 Idaho 443, 92 P.2d 790 (1939); Cahill v. Logue, supra.

Plaintiffs have cross-appealed asserting that the verdict was insufficient. Upon a review of all the evidence, the verdict appears reasonable and it is our opinion that the jury did not abuse its discretion in finding the particular amount of its verdict. Sinclair v. Great Northern Ry. Co., 94 Idaho 409, 489 P.2d 442 (1971).

The judgment is therefore affirmed. Costs to the respondent.

McQUADE, C. J., McFADDEN and DONALDSON, JJ., and DURTSCHI, District Judge, concur.