72 P.3d 905

**CITY OF SANDPOINT, Plaintiff–Respondent,**

v.

**SANDPOINT INDEPENDENT HIGHWAY DISTRICT, a political subdivision of the State of Idaho, Defendant–Appellant.**

**No. 27441.**

Supreme Court of Idaho,
Boise, May 2003 Term.

June 19, 2003.

See also *City of Sandpoint v. Sandpoint Indep. Highway Dist.*, 126 Idaho 145, 879 P.2d 1078 (1994).

Bruce H. Greene, Sandpoint, for appellant. Mr. Greene waived oral argument.

Scott W. Reed, Coeur d'Alene, for respondent. Mr. Reed argued.

EISMANN, Justice.

This is an appeal from a judgment holding that because the City of Sandpoint had established a functioning street department, it and not the Sandpoint Independent Highway District has control over all of the streets within the city limits. We reverse the judgment of the district court.

## I. FACTS AND PROCEDURAL HISTORY

This is a continuation of an ongoing dispute between the City of Sandpoint (City) and the Sandpoint Independent Highway District (Highway District) over which entity has responsibility for the maintenance of the City's streets. The City was initially organized as a village in 1900, and is presently a municipal corporation. The Highway District was formed in 1930, and its boundaries are nearly coterminous with those of the City. The Highway District includes approximately 1220 feet of roadway that is outside the City, and there is a small area in the northern end of the City that is outside the Highway District. In prior litigation between the parties, this Court held "that the Highway District has exclusive general supervisory authority to maintain the streets within the Highway District absent a showing by the City that it has a functioning street department." *City of Sandpoint v. Sandpoint Indep. Highway Dist.*, 126 Idaho 145, 150, 879 P.2d 1078, 1083 (1994).

On May 17, 2000, the City passed various resolutions concerning the establishment of a street department as a division of the City's Public Works Department. The resolutions expanded the duties of that Department to include "total maintenance, construction, reconstruction, repair, storm water management, snow removal, sanding, and traffic con-

trol of the City's highway and street system"; established standards and specifications for streets and rights-of-way within the City; established a permit system for encroachments on streets and public rights-of-way within the City; and authorized the Street Department to acquire by lease or purchase two motor graders, a front end loader, a snow blower, a water/de-icer truck, and a sander truck.

On May 18, 2000, the City commenced this lawsuit seeking a declaratory judgment that it has a functioning street department and therefore has exclusive general supervisory authority for the maintenance, construction, repair, reconstruction, storm water management, snow removal, sanding and traffic control of the public streets within the City. On August 4, 2000, the City filed an amended complaint adding two more causes of action. By one it sought to enjoin the Highway District from exercising any supervisory control of any nature over the public streets within the City. By the other it sought to impound monies raised by the Highway District pursuant to a special levy instituted in January 2000, to require the Highway District to pay certain funds to the City, and to enjoin it from making any levy upon real property within the City.

The Highway District responded by filing a motion to dismiss on the ground that the amended complaint did not state a claim upon which relief could be granted. Because it presented matters outside the complaint in support of that motion, the district court treated the motion as one for summary judgment. The City also moved for summary judgment. After oral argument on the motions, the district court issued an order denying the Highway District's motion and grant-

ing the City's motion in part. The district court ruled that there was no genuine issue of material fact that the City had a functioning street department and that, under the applicable statutes, the City therefore had responsibility for the maintenance of all public streets within its boundaries. The district court reserved ruling on issues regarding the Highway District's taxing authority. After the district court certified the partial summary judgment as final, the Highway District timely appealed.

## II. ANALYSIS

In an appeal from an order of summary judgment, this Court's standard of review is the same as the standard used by the trial court in ruling on a motion for summary judgment. *Infanger v. City of Salmon*, 137 Idaho 45, 44 P.3d 1100 (2002). All disputed facts are to be construed liberally in favor of the non-moving party, and all reasonable inferences that can be drawn from the record are to be drawn in favor of the non-moving party. *Id.* Summary judgment is appropriate if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. *Id.* If the evidence reveals no disputed issues of material fact, then only a question of law remains, over which this Court exercises free review. *Id.*

Idaho Code § 40-1333 provides: "Cities, with city highway systems, shall be responsible for the construction, reconstruction and maintenance of highways in their respective city systems, except as provided in section 40-607, Idaho Code."[1] A "city system"

---

1. Idaho Code § 40-607 provides:

The costs of constructing, reconstructing, maintaining and acquiring rights-of-way for highways in a county highway system and a highway district highway system shall be borne by the responsible highway jurisdiction. This section shall not be construed as preventing counties and highway districts from contracting with the state for engineering or other services provided just compensation is paid. If planning or engineering studies show the existence of a need, a county or highway district may purchase, condemn or otherwise ac-

quire new or additional rights-of-way for a new alignment of or improvement of an existing alignment of an extension of a county or highway district rural major collector highway through cities with populations of less than five thousand (5,000), provided the extension does not eliminate access to adjacent property owners. A county or highway district shall have jurisdiction, with the full authority to construct, maintain and control, over an extension of a rural major collector highway eligible for federal highway funds within a city, when the city population is less than five thousand

means "all public highways within the corporate limits of a city, with a functioning street department, except those highways which are under federal control, a part of the state highway system, part of a highway district system or an extension of a rural major collector route as specified in section 40–607, Idaho Code." IDAHO CODE § 40–104 (2002).

■ Likewise, Idaho Code § 40–1310 provides: "The commissioners of a highway district have exclusive general supervision and jurisdiction over all highways and public rights-of-way within their highway system...." A "highway district system" is defined as "all public highways within each highway district, except those included within the state highway system, those under another state agency, those included within city highway systems of incorporated cities with a functioning street department, and those under federal control." IDAHO CODE § 40–109 (2002). In addition, Idaho Code § 50–1330 limits the jurisdiction of some highway districts. It provides that in a county with highway districts,[2] the highway district board of commissioners "shall have exclusive general supervisory authority over all public streets and public rights of way under their jurisdiction within their district, excluding public streets and public rights of way located inside of an incorporated city that has a functioning street department." Thus, the above statutes, insofar as is relevant to this case, provide that a city with a functioning street department has jurisdiction over all public highways within its corporate limits, except those highways that are part of a highway district system, and a highway district has jurisdiction over all public highways within the highway district, except those included within a city highway

system of an incorporated city with a functioning street department.

The district court held that the City had a functioning street department because "it has established a department responsible for maintenance, construction, repair, snow removal, sanding and traffic control of streets within Sandpoint's city limits." The district court further held that the creation of such street department automatically vested the City with jurisdiction over the streets within its boundaries, including those that had previously been within the boundaries of the Highway District.

The Highway District argues that the creation of the street department did not automatically grant the City jurisdiction over all city streets. It relies upon Idaho Code § 50–1301, which defines a "functioning street department" as follows: "A city department responsible for the maintenance, construction, repair, snow removal, sanding and traffic control of a public highway or public street system and which receives funds from the highway distribution account to local units of government pursuant to section 40–709, Idaho Code." The Highway District focuses on the phrase "responsible for the maintenance, construction, repair, snow removal, sanding and traffic control of a public highway or public street system." It argues that the City's Public Works Department cannot be a functioning street department because it is not responsible for the maintenance, construction, repair, snow removal, sanding and traffic control of any streets. According to the Highway District, the City's Public Works Department cannot become responsible for any streets that were within the Highway District boundaries unless the Highway District first loses its jurisdiction over those streets, such as by dissolution of the Highway District[3] or by detachment

---

(5,000). Counties and highway districts may enter into any mutual agreement for the transfer of maintenance and control of the rural major collector highway extension to the city. A county or highway district may contract with an adjoining county or highway district for the construction and/or maintenance of any part of its highway system.

2. Idaho Code § 15–1330 applies to any "county with highway districts," excluding from its appli-

cation those counties that have a single, countywide highway district.

3. We recently issued a decision affirming the action of the Board of County Commissioners of Bonner County in ordering an election to determine whether the Sandpoint Independent Highway District should be dissolved. *Sandpoint Indpen. Highway Dist.v. Board of County Comm'rs*, No. 27194 (Idaho June 4, 2003).

from the District.[4] Thus, the issue is what triggers the City's right to exercise jurisdiction over the streets within its city limits.

The interpretation of a statute is a question of law over which we exercise free review. *Gooding County v. Wybenga,* 137 Idaho 201, 46 P.3d 18 (2002). It must begin with the literal words of the statute, *Thomson v. City of Lewiston,* 137 Idaho 473, 50 P.3d 488 (2002); those words must be given their plain, usual, and ordinary meaning; and the statute must be construed as a whole. *State v. Hart,* 135 Idaho 827, 25 P.3d 850 (2001). If the statute is not ambiguous, this Court does not construe it, but simply follows the law as written. *Hansen v. State Farm Mut. Auto. Ins. Co.,* 112 Idaho 663, 735 P.2d 974 (1987). A statute is ambiguous where the language is capable of more than one reasonable construction. *Jen–Rath Co., Inc. v. Kit Mfg. Co.,* 137 Idaho 330, 48 P.3d 659 (2002). If the statute is ambiguous, then it must be construed to mean what the legislature intended for it to mean. *Miller v. State,* 110 Idaho 298, 715 P.2d 968 (1986). To determine that intent, we examine not only the literal words of the statute, but also the reasonableness of proposed constructions, the public policy behind the statute, and its legislative history. *Lopez v. State, Indus. Special Indem. Fund,* 136 Idaho 174, 30 P.3d 952 (2001); *Adamson v. Blanchard,* 133 Idaho 602, 990 P.2d 1213 (1999). Statues that are *in pari materia* must be construed together to effect legislative intent. *Gooding County v. Wybenga,* 137 Idaho 201, 46 P.3d 18 (2002). Statutes are *in pari materia* if they relate to the same subject. *Id.* Where a statute with respect to one subject contains a certain provision, the omission of such provision from a similar statute concerning a related subject is significant to show that a different intention existed. *Kopp v. State,* 100 Idaho 160, 595 P.2d 309 (1979).

With respect to the issue involved in this case, there is ambiguity. Idaho Code §§ 40–109 and 50–1330 could be construed as indicating that a highway district has no jurisdiction over streets within a city once it has a functioning street department. Idaho Code § 40–104(1), however, indicates that in a city with a functioning street department, a highway district can have jurisdiction over some of the city streets. It excludes from the "city system" of a city with a functioning street department any public highways that are part of a highway district system.

The applicable statutes do not address how to effect the transition when a city that is within the boundaries of a highway district creates a functioning street department. They do not address the division of assets or debt. Such omission is significant. For example, if a portion of an existing highway district is detached from it after an election, Idaho Code § 40–1609 expressly provides that the district shall retain all personal property and that the detached portion shall remain liable for its proportionate share of all bonded, warrant, and other indebtedness incurred by the district prior to the time of detachment. Idaho Code § 40–1611 provides that any bonds or warrants of the highway district outstanding at the time of the detachment remain valid. If a highway district is dissolved, there are express provisions for the payment of its debts and the delivery of its assets to a succeeding operational unit, IDAHO CODE §§ 40–1811 & 40–1814 (2002); for the payment of its current claims, IDAHO CODE § 40–1412 (2002); and for the continuing validity of any outstanding bonds or warrants of the dissolved district, IDAHO CODE § 40–1818 (2002). If highway districts are consolidated, statutes expressly provide that all property rights of the former highway districts shall be vested in and become the property of the consolidated district, IDAHO CODE § 40–1515 (2002), and there is express direction regarding the payment of the debts of the former districts, IDAHO CODE § 40–1516 (2002), the funding or refunding of their pre-consolidation debts, IDAHO CODE § 40–1517 (2002), and the continuing liability of property within the former districts for their respective pre-consolidation debts, IDAHO CODE § 40–1518 (2002). Idaho Code §§ 40–1614 through 40–1630 specify the procedure for annexing adjacent property into a highway district, including that the annexed area becomes subject to

4.  See Idaho Code §§ 40–1601 *et seq.*

taxation for the payment of all outstanding obligations of the existing district at the time of annexation, IDAHO CODE §§ 40–1622 & 40–1629 (2002). If a county adopts a single county-wide highway district, the county commissioners are directed by statute to dissolve all existing city highway systems, highway districts, and county highway systems within the county, IDAHO CODE § 40–1407 (2002); all of their machinery, buildings, lands, and property immediately become vested in the county commissioners for transfer to the county-wide highway district, IDAHO CODE § 40–1410 (2002); there is express direction for the payment of the debts of the dissolved city highway systems, highway districts, and county highway systems, IDAHO CODE § 40–1411 (2002); and the county-wide district becomes liable for all unliquidated obligations of the dissolved city highways systems, highways districts, and county highway systems. Finally, Chapter 17 of Title 40, Idaho Code, specifies procedures to adopt a new method of administration of the secondary highways in the county by obtaining voter approval of one of three options proposed by a highway study commission. If the voters approve the change, Idaho Code § 40–1709(2) provides for the transfer of assets and liabilities of the prior highway jurisdictions to the succeeding operational unit.

■ Considering the above-cited statutes, the legislature was very specific in outlining the procedures to alter highway districts by detaching territory, by dissolution, by consolidation, by annexation, by adoption of a single county-wide district, and by reorganization of county highway administration. There is no indication that the legislature intended that a city included within an existing highway district could exclude its streets from the highway district simply by creating a city street department capable of assuming the maintenance, construction, repair, snow removal, sanding and traffic control of the city streets. Had the legislature so intended, it would undoubtedly have enacted statutes specifying the procedures for effecting that change, including the payment of existing obligations, as it did in other instances involving the alteration of a highway district. Rather, it appears that the legislature's intent was to prevent cities with functioning street departments from being included within a highway district, with the exception of a single county-wide highway district created under Chapter 14, Title 40, Idaho Code. For example, the three statutory options for reorganizing county highway administration under Chapter 17, Title 40, Idaho Code, all exclude highways and streets within cities with functioning street departments.[5] Thus, we hold that the City cannot obtain jurisdiction over city streets that are within the boundaries of the Highway District unless the Highway District's jurisdiction over those streets is first lawfully terminated under the appropriate statutory provisions. Therefore, the partial summary judgment of the district court is reversed.

## III. CONCLUSION

The partial summary judgment entered by the district court is reversed. Costs on appeal are awarded to the Highway District.

Chief Justice TROUT and Justices SCHROEDER, WALTERS, and KIDWELL concur.

---

5.  Idaho Code § 40–1713(2) provides:
    The options for the administration of the county's secondary highways are as follows: (a) To establish a countywide highway system for the administration of the secondary highway system of the entire county, exclusive of those highways and streets within cities, with functioning street departments, by county commissioners; (b) To establish a single countywide highway district for the administration of the secondary highway system of the entire county, exclusive of those highways and streets within cities with functioning street departments, independent of the administration of the county commissioners; and (c) For the division of the county into not more than four (4) highway districts for the administration of the secondary highways of the county, exclusive of those highways and streets within cities, with functioning street departments, independent of the county commissioners.