**Alfredo Escareno DELGADILLO; Veronica Escareno Delgadillo, husband and wife, Plaintiffs—Appellants,**

**v.**

**UNITRONS CONSOLIDATED, INC., a California Corporation; Superspeed Transportation, Inc., a California Corporation aka Superspeed Transporta-**

tion Limited; Ningbo Electric and Consumer Goods I/E Corp., of Ningbo China; Zhe Jiang Yu Jao Mechanical Plastic Factory; Zhejiang Yanfeng Plastic Machinery General Factory; Jer Jiang Yui Yeau Plastic Materials Machinery Factory, Defendants—Appellees.

No. 04–35946.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted June 7, 2006.

Decided July 19, 2006.

Before BEEZER, TALLMAN, and BYBEE, Circuit Judges.

## MEMORANDUM *

Plaintiff–Appellants Alfredo Delgadillo and his wife filed a products liability claim alleging five causes of action against Defendant–Appellees Unitrons Consolidated, Inc. and Superspeed Transportation, Inc. pursuant to the Idaho Products Liability Reform Act (IPLRA), Idaho Code Ann. § 6–1401 *et seq.* The district court granted summary judgment in favor of Defendant–Appellees based on its determination that they were not "product sellers" under the Act and could not be held liable.

We affirm.

### I

We review a district court's grant of summary judgment de novo. *Universal Health Servs., Inc. v. Thompson,* 363 F.3d 1013, 1019 (9th Cir.2004). We "must determine, viewing the evidence in the light most favorable to the nonmoving party, whether there are any genuine issues of material fact and whether the district court correctly applied the relevant substantive law." *Id.* (internal quotation marks omitted).

---

* This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir. R. 36–3.

The parties are familiar with the facts and we do not repeat them here.

## II

Appellants seek to hold Appellees liable under the "imputed liability" provision of the IPLRA, § 6–1407(4). Section 6–1407(4) provides that "[a] product seller, other than a manufacturer, is also subject to the liability of [the] manufacturer if ... [t]he manufacturer is not subject to service of process under the laws of the claimant's domicile; or ... [t]he claimant would be unable to enforce the judgment against the product manufacturer." The district court determined, and Appellees do not dispute, that the manufacturer is unavailable under the terms of this section and that, as a result, Appellees are liable if they are "product sellers" under the IPLRA.

The IPLRA defines "product seller" as "any person or entity that is engaged in the business of selling products, whether the sale is for resale, or for use or consumption" and states the term "includes a manufacturer, wholesaler, distributor, or retailer of the relevant product." § 6–1402(1). The IPLRA further provides that the "relevant product" is "that product ... which gave rise to the product liability claim." § 6–1402(3). Whether an entity is a "product seller" is a question of law. *See Anderson Hay & Grain Co., Inc. v. United Dominion Indus., Inc.,* 119 Wash.App. 249, 76 P.3d 1205, 1210 (2003).

Appellees argue they are merely "freight forwarders," not "product sellers" under the IPLRA. Appellees describe "freight forwarders" as "travel agents for cargo" and claim their role with respect to the machine was simply to arrange for its shipment to the United States, prepare the paperwork, and collect and pay freight charges. Appellees assert these activities are insufficient to qualify them as "product sellers" under the Act.

There is a dearth of case law in Idaho interpreting the term "product seller." In Idaho, statutory interpretation "begin[s] with the literal words of the statute." *City of Sandpoint v. Highway Dist.,* 139 Idaho 65, 72 P.3d 905, 909 (2003). If a statute is ambiguous, then it is to be construed as the legislature intended. *Id.* Idaho courts determine intent by examining the "literal words of the statute," as well as "the reasonableness of proposed constructions, the public policy behind the statute, and its legislative history." *Id.; see also Idaho v. Hart,* 135 Idaho 827, 25 P.3d 850 (2001). The IPLRA was modeled on the Model Uniform Product Liability Act (MUPLA), 44 Fed.Reg. 62,716 (Oct. 31, 1979), *see Peterson v. Idaho First Nat'l Bank,* 117 Idaho 724, 791 P.2d 1303, 1307 (1990). Because it appears that the Idaho legislature adopted the definition of "product seller" from the MUPLA, discussions of the underlying rationales, interpretations, and applications of the MUPLA are instructive. *See Peterson,* 791 P.2d at 1307 n. 1.

The Official Analysis of the MUPLA explains that " '[p]roduct seller' includes any party in the regular distribution chain." 44 Fed.Reg. at 62,718, *reprinted in* 7–B LOUIS R. FRUMER & MELVIN I. FRIEDMAN, PRODUCTS LIABILITY app. B.02 at 16 (2005). With respect to § 105 of the MUPLA (which corresponds to § 6–1407(4) of the IPLRA), the Official Analysis further explains that the imputed liability provision applies "when the sale of a product is the principal part of the transaction." *Id.* at 16–17.

The Connecticut Supreme Court has interpreted the term "product seller" as it is used in the Connecticut Product Liability Act (CPLA), CONN. GEN.STAT. §§ 52–572m–52–527q, which was modeled on an early draft of the MUPLA. *Svege v. Mercedes–Benz Credit Corp.,* 329 F.Supp.2d 272, 278

n. 6 (D.Conn.2004). In *Burkert v. Petrol Plus of Naugatuck, Inc.*, 216 Conn. 65, 579 A.2d 26, 30–31 (1990), the Connecticut Supreme Court determined that the owner of a trademark that licensed its mark to a manufacturer for use in marketing a product could not be held liable as a "product seller" because the trademark owner was not "[a] manufacturer, wholesaler, distributor, retailer ... of the defective [product], and was not otherwise 'engaged in the business of selling[.]' " Two federal courts applying the Connecticut law have relied on *Burkert* for the proposition that whether a defendant qualifies as a "product seller" under the CPLA depends on whether an entity is sufficiently involved in placing the product into the stream of commerce. *See Svege*, 329 F.Supp.2d at 280; *Oliva v. Bristol–Myers Squibb Co.*, 2005 WL 3455121, at *4 (D.Conn. Dec.16, 2005).

In examining whether the defendant was sufficiently involved in placing the product into the stream of commerce to qualify as a "product seller," the federal courts applying Connecticut law examined factors such as: (1) whether the entity derived economic benefit from the sale of the product; (2) whether the entity participated in advertising, marketing or creating consumer demand for the product; (3) whether the entity took title to the product; and (4) the extent of the entity's knowledge and control over the product. *See Svege*, 329 F.Supp.2d at 280 (determining the defendant was a "product seller" because it held title to the product, the product was purchased by the buyer pursuant to a marketing program the defendant helped create, and the defendant had helped finance a large portion of the product's overall sales); *Oliva*, 2005 WL 3455121, at *4–*5 (determining a genuine question of material fact existed as to whether defendants were "product sellers" because there was sufficient evidence from which a jury could find that the defendant derived economic benefit from promoting the product and the defendant had extensive knowledge of the product).

The district court properly focused its attention on the nature of Appellees' involvement in placing the product into the stream of commerce. Viewing the evidence in the light most favorable to the Appellants, the district court determined that: (1) the lack of a freight forwarding license could lead a reasonable trier of fact to infer Appellees had sold the product; (2) the invoices demonstrating Appellees engaged in other transactions involving industrial equipment could lead a reasonable trier of fact to infer the Appellees had sold other products; (3) the Appellees' insurance policy could lead a reasonable trier of fact to infer Appellees feared liability for distribution of products; and (4) the Appellees' possession of a negotiable bill of lading could lead a reasonable trier of fact to infer the Appellees had title to the product.

Nonetheless, the district court properly determined that this evidence is insufficient to hold as a matter of law that Appellees are "product sellers." Notwithstanding the lack of a freight forwarding license (which, Appellees point out, should give rise to no inference at all since the district court examined the wrong version of the applicable law and no freight forwarding license was required at the time of the transaction), there is no evidence that sale of the product was the principal purpose of the transaction. On the contrary, a representative of the company that purchased the product stated that she understood the Appellees only as "coordinating the documentation for delivery from the seller" and that her company "did not hire, retain, or contract with" Appellees. Further, the district court determined that the invoices and insurance policy only permit a reason-

able fact finder to infer Appellees may have been involved in the sale or distribution of other goods, not that Defendants sold or distributed the relevant product. Finally, there is little evidence from which a reasonable trier of fact could conclude that the Defendants benefitted from the sale of the product; there is no evidence that Defendants advertised the product, marketed the product, financed the purchasing of the product, or created consumer demand for the product; and there is no evidence Appellees had any knowledge or control over the product. Rather, all the evidence tends to show the Appellees acted as typical freight forwarders and their role was merely to arrange for transportation of the product from the Chinese manufacturer-seller to the American buyer.

The district court properly determined that Appellants failed to create a genuine dispute of material fact as to whether Appellees are "product sellers" under the IPLRA. Accordingly, Appellees are not subject to liability under the imputed liability provision of the IPLRA and the grant of summary judgment was appropriate.

**AFFIRMED.**