## IN THE SUPREME COURT OF THE STATE OF IDAHO

### Docket No. 41463

IN THE MATTER OF THE ADOPTION OF )
JOHN DOE AND JOHN DOE I. )
-------------------------------------------------------- )
JANE (2013-25) DOE, )
)
    Petitioner-Appellant, )
)
_____ )
)

**January 2014 Term**

**2014 Opinion No. 12**

**Filed: February 10, 2014**

**Stephen W. Kenyon, Clerk**

---

Appeal from the District Court of the Fourth Judicial District of the State of Idaho, Ada County. Hon. Cathleen MacGregor-Irby, Magistrate Judge.

The judgment is <u>reversed</u> and the case is <u>remanded</u> for further proceedings.

Mauk & Burgoyne, Boise, Nate Peterson Law PLLC, Boise, and Lisa Shultz, Boise, attorneys for appellant.

---

J. JONES, Justice.

This appeal arises from the dismissal of a petition for adoption filed by Jane Doe, the long-time domestic partner of Jane Doe I. Jane Doe I is the legally recognized parent of the two children subject to the adoption: John Doe and John Doe I. The magistrate court dismissed Jane Doe's petition for adoption when there was no opposition to the petition, without inviting legal briefing, without notice to the affected parties, and without holding a hearing. Jane Doe filed a motion for reconsideration, but before a ruling on that motion was made, I.A.R. 12.2 compelled her to file a Notice of Appeal to this Court.

### I.
### FACTUAL AND PROCEDURAL HISTORY

On August 30, 2013, Jane Doe filed a petition for adoption. She sought to adopt her long-time partner's two children, John Doe and John Doe I, as a second parent. Jane Doe and Jane Doe I have been in a committed relationship since 1995. They have demonstrated their commitment to one another repeatedly—through participating in a Declaration of Commitment Ceremony in Boise on May 3, 1997, by obtaining a Civil Union from the state of Vermont on

1

June 19, 2002, and by getting married in California on July 26, 2013.[1] Together, Jane Doe and Jane Doe I planned and prepared for the birth of John Doe, and later, the adoption of John Doe I. John Doe was born to Jane Doe I in 1998, conceived by artificial insemination. In 2002, Jane Doe I adopted John Doe I, who was born in 2001 and placed with Jane Doe and Jane Doe I two days after being born. Thus, Jane Doe has, along with Jane Doe I, raised these two children since their births, for fifteen and twelve years, respectively.

In conjunction with her petition for adoption, Jane Doe submitted a Pre-Placement Home Study ("Home Study") performed by Certified Adoption Professional Elizabeth Tate. The Home Study indicates that Jane Doe has traditionally been the children's primary caregiver, while Jane Doe I has been the family's primary source of income. Currently though, Jane Doe works as a playground supervisor and volunteers as a football coach. She has coached both John Doe and John Doe I's soccer and basketball teams, and has served on the Liberty Elementary PTA board for over six years, three of which she served as PTA president. When Ms. Tate asked the children their thoughts regarding the adoption, John Doe stated that Jane Doe "is my mom, she's been here my whole life, and I don't know anything different." Similarly, John Doe I indicated that Jane Doe "has been with me all my life[,]" that he likes adoption because "different people can be together as a family[,]" and that he wants Jane Doe to adopt him because she "loves me and wants to be with me forever." In the Home Study, Ms. Tate approved of and recommended that Jane Doe be permitted to adopt John Doe and John Doe I, stating:

> [Jane Doe] is emotionally, culturally, physically, and financially prepared to adopt [the boys]. [Jane Doe and Jane Doe I] appear to have a strong and stable marriage and relationship. [Jane Doe] has met the requirements mandated by the State of Idaho, in regard to age, health and physical fitness, criminal clearance, education, employment, income, and the ability to parent adopted children; additionally, she has the full support of extended family members and friends.

On September 19, 2013, however, the magistrate court entered an Order of Dismissal on the grounds that "the petitioner must be in a lawfully recognized union, i.e. married to the prospective adoptee's parent, to have legal standing to file a petition to adopt that person's biological or adopted child." The magistrate dismissed the petition "*sua sponte*, without any motion or opposition to the Petition, without prior notice to any of the affected parties, without

---

[1] Jane Doe and Jane Doe I's marital status is not recognized in Idaho. *See* Art. III, § 28, Idaho Const. Appellant neither disputes that, nor does she seek recognition of their marriage in this appeal.

inviting legal briefing, without any apparent consideration of the Pre-Adoptive Home Study and without hearing." A Final Judgment was entered the same day.

On September 30, 2013, Jane Doe filed a Motion to Alter and Amend Judgment and/or Motion for Reconsideration ("Motion for Reconsideration"). In that motion, Jane Doe argued that the magistrate court erred (1) in denying her "petition for adoption without a hearing to determine the best interests of the prospective adoptees because Petitioner meets all the statutory requirements for adoption" and (2) in its interpretation of the applicable adoption statutes. In conjunction with its Motion for Reconsideration, Jane Doe filed the affidavit of her legal counsel, which advised the magistrate of the approval of various adoptions by unmarried individuals. On October 3, 2013, and before the magistrate ruled on the Motion for Reconsideration, Jane Doe filed a Notice of Appeal to this Court, as required by I.A.R. 12.2.[2] A letter from Deputy Attorney General Steven L. Olsen was filed on October 23, 2013, in which he indicated that the State will not be appearing in this case.

## II.
## ISSUES ON APPEAL

I.      Did the magistrate court err in dismissing the petition for adoption without holding a hearing?

II.     Do Idaho's adoption statutes unambiguously allow a second, prospective parent to adopt, regardless of marital status?

## III.
## DISCUSSION

### A. Standard of Review

Here, the magistrate court dismissed the petition because it determined that Jane Doe lacked standing. "Jurisdictional issues, such as standing, are questions of law," over which this Court exercises free review. *Martin v. Camas Cnty. ex rel. Bd. Comm'rs*, 150 Idaho 508, 512, 248 P.3d 1243, 1247 (2011). Additionally, this Court exercises free review when interpreting the meaning of a statute. *Stonebrook Const., LLC v. Chase Home Fin., LLC*, 152 Idaho 927, 930, 277 P.3d 374, 377 (2012).

### B. The magistrate erred in dismissing Jane Doe's petition for adoption.

---

[2] I.A.R. 12.2(a)(1) provides in relevant part: "An appeal from any final judgment . . . granting or denying a petition for . . . adoption shall be made only by physically filing a notice of appeal with the clerk of the district court within fourteen (14) days from the date of issuance of the judgment." I.A.R. 12.2(a)(1).

As Jane Doe points out, the magistrate's "Order of Dismissal and [the] Judgment . . . fail to identify any statute or civil rule which supports the *sua sponte* dismissal of an adoption petition without allowing the petitioner to present anything except the petition regarding her eligibility to adopt." Instead, the magistrate court characterized its grounds for dismissal as an issue of standing. As the following discussion demonstrates, this was in error.

> **1.** **The magistrate violated Jane Doe's right to due process when it dismissed her petition without affording her the opportunity to be heard in a meaningful manner.**

Jane Doe argues that the magistrate deprived her of an opportunity to be heard and thus "(1) has deprived the Petitioner of any opportunity to clarify uncertainties and arguable deficiencies in the petition and supporting documents, and to enlighten the lower court on persuasive points of law like those addressed on this appeal, (2) has evaded any consideration of whether the best interests of the children would be promoted by the adoption and (3) has needlessly constrained this Court's fully informed appellate review."

"Due process requires the right to timely notice and the right to be heard in a meaningful forum." *In re Chaney*, 126 Idaho 554, 556, 887 P.2d 1061, 1063 (1995). In *In re Chaney*, the appellant argued that he was denied due process when the magistrate ruled that he did not have standing to contest an adoption. *Id*. This Court held, however, that the appellant was not deprived of due process because he had notice of the adoption, "and the magistrate then allowed [the appellant] to testify" and took his testimony into consideration. *Id*.

Aside from her initial petition for adoption, Jane Doe was given no opportunity to be heard. Furthermore, she had no notice that her petition could potentially be dismissed because there was no opposition to it. Rather, the magistrate court acted unilaterally in dismissing it. The magistrate did not hold a hearing to determine whether the adoption would be in the best interests of the children, and she did not invite briefing before summarily dismissing the petition. We conclude that the magistrate court deprived Jane Doe of due process because she was not given notice and the opportunity to be heard in a meaningful manner.

> **2.** **By not holding a hearing, the magistrate court acted contrary to Idaho's statutory adoption scheme.**

Idaho Code § 16-1506 mandates that a hearing be held after an adoption petition is filed. Section 16-1506 is reproduced in part below:

> Proceedings on adoption.

4

(1) Proceedings to adopt a child shall be commenced by the filing of a petition together with a copy thereof. The petition shall be initiated by the person or persons proposing to adopt the child and shall be filed with the district court of the county in which said person or persons reside. . . . *At the time fixed for hearing such petition* the person adopting a child, and the child adopted, and the spouse of the petitioner if a natural parent of the child, must appear before the court of the county wherein the petition was filed.

I.C. § 16-1506 (emphasis added).

The phrase "at the time fixed for hearing such petition" contains no qualifiers, limitations, or exceptions. It does not, for example, say, "at the time fixed for hearing, if any," nor does the phrase hint that a hearing is optional, or even a judgment call within a court's discretion. The language, by its plain, unambiguous meaning indicates that in the context of adoption proceedings in Idaho, a post-petition hearing is required. The magistrate's summary dismissal of Jane Doe's adoption petition, without first holding a hearing, constitutes a failure to comply with I.C. § 16-1506.

**C. Idaho's adoption statutes unambiguously allow a second, prospective parent to adopt, regardless of marital status.**

On appeal, Jane Doe argues that Idaho's adoption statutes unambiguously allow her to adopt, that she meets all of the statutory requirements to adopt, that a second, prospective parent may adopt without terminating the rights of the existing legal parent, and that it is immaterial that she is considered unmarried under state law.

The magistrate court acknowledged that I.C. § 16-1501 is the controlling statute, but then stated that "the court does not find any provision that allows for the adoption of a person's adopted and/or biological children by that person's cohabitating, committed partner." Rather than look to the plain language of I.C. § 16-1501, the magistrate skipped right to attempting to ascertain legislative intent. In doing so, she cited to the following rule of statutory construction: "In interpreting statutes, we are governed by the rule that statutes which relate to the same subject matter, or are [*in pari materia*], must be construed together." In attempting to apply this rule, the magistrate pointed to I.C. § 16-1503 and I.C. § 16-1506(1), both of which discuss certain circumstances where a spouse is involved in an adoption. The first provision, I.C. § 16-1503, indicates that a married person may not adopt without the consent of his or her spouse, while the second provision, I.C. § 16-1506(1), states that when a spouse of a petitioner is the natural parent of the adoptee, that spouse must appear before the court. *See* I.C. § 16-1503 and I.C. § 16-1506(1). Neither statute applies to the facts of this case because under Idaho law, Jane

5

Doe is not married. Apparently under the impression that statutes regarding marriage and those regarding adoption somehow relate to the same subject matter, the magistrate noted that I.C. §§ 32-201 and 32-202 allow for marriage between a man and a woman only, before concluding:

> When considering all of these statutes together, this court concludes that the legislature's intent in relation to adoptions is that the petitioner must be in a lawfully recognized union, i.e. married to the prospective adoptee's parent, to have legal standing to file a petition to adopt that person's biological or adopted child.

The magistrate failed to consider that when interpreting statutes, courts apply this well-established standard:

> Interpretation of a statute begins with an examination of the statute's literal words. Where the language of a statute is plain and unambiguous, courts give effect to the statute as written, without engaging in statutory construction. Only where the language is ambiguous will this Court look to rules of construction for guidance and consider the reasonableness of proposed interpretations.

*Stonebrook Const.*, 152 Idaho at 931, 277 P.3d at 378 (quoting *Curlee v. Kootenai Cnty. Fire & Rescue,* 148 Idaho 391, 398, 224 P.3d 458, 465 (2008)). The literal words of the statute "must be given their plain, usual, and ordinary meaning; . . . [i]f the statute is not ambiguous, this Court does not construe it, but simply follows the law as written." *City of Sandpoint v. Sandpoint Independent Highway Dist.*, 139 Idaho 65, 69, 72 P.3d 905, 909 (2003). However, a statute "is ambiguous where reasonable minds might differ or be uncertain as to its meaning." *Stonebrook Const.*, 152 Idaho at 931, 277 P.3d at 378. "If the statute is ambiguous, then it must be construed to mean what the legislature intended for it to mean." *City of Sandpoint*, 139 Idaho at 69, 72 P.3d at 909. Legislative intent is determined by examining "the literal words of the statute, . . . the reasonableness of proposed constructions, the public policy behind the statute, and its legislative history." *Id*.

The rule of *in pari materia* is a "canon of statutory construction" used to effectuate legislative intent. *Erlenbaugh v. U.S.*, 409 U.S. 239, 243 (1972); *City of Sandpoint*, 139 Idaho at 69, 72 P.3d at 909.  It indicates that statutes relating to the same subject—or those that are *in pari materia*—must be construed together. *City of Sandpoint*, 139 Idaho at 69, 72 P.3d at 909. As a rule of statutory construction, it would be inapplicable when a statute is unambiguous, because in that case, "the clearly expressed intent of the legislative body must be given effect, and there is no occasion for a court to consider rules of statutory construction." *Payette River Property Owners Assn. v. Bd. of Commrs. of Valley Cnty.,* 132 Idaho 551, 557, 976 P.2d 477, 483 (1999).

Here, the magistrate court's analysis constitutes a deviation from existing law. The magistrate skipped the first part of this Court's well-established standard—examining the statute's literal words—and jumped directly to applying a rule of statutory construction, without first determining whether the provision is ambiguous. Thus, this Court must first examine whether I.C. § 16-1501 is ambiguous.

In doing so, this Court's analysis necessarily begins with an examination of the statute's literal words. Idaho Code § 16-1501 provides that "[a]ny minor child may be adopted by any adult person residing in and having residence in Idaho, in the cases and subject to the rules prescribed in this chapter." I.C. § 16-1501. "Any adult person" is not defined in title 16, nor should it be—it is difficult to imagine reasonable minds differing as to its meaning. *See* I.C. § 16-103. Jane Doe points out that this Court has recognized that the word "any" means "without restriction, exclusion or exception." *See Von Lindern v. Union Pac. R. Co.*, 94 Idaho 777, 779, 498 P.2d 345, 347 (1972) (quoting *Emmolo v. Southern Pac. Co.*, 204 P.2d 427, 429 (Cal. 1972) ("The word 'any' is defined in part as 'Indicating a person, thing, etc., as one selected without restriction or limitation of choice, with the implication that every one is open to selection without exception . . .")). Because "any adult person" is susceptible to only one interpretation—a human being over the age of 18—I.C. § 16-1501 is unambiguous. Undoubtedly, "any adult person" cannot possibly be construed to mean "any married adult person" as the magistrate ultimately determined. And, as an adult person, Jane Doe unequivocally has standing to adopt.

While it is true that I.C. § 16-1501 is "subject to the rules prescribed in this chapter[,]" nothing in chapter 15 comes close to requiring that "a petitioner must be in a lawfully recognized union, i.e. married to the prospective adoptee's parent, to have legal standing to file a petition to adopt that person's biological or adopted child[,]" as was held by the magistrate in this case. Instead, chapter 15 mentions "spouse" in five separate provisions[3] and "married" in three

---

[3] The specific provisions are as follows: (1) § 16-1502 ("[t]he person adopting a child must be at least fifteen (15) years older than the person adopted . . . except such age restrictions or requirements shall not apply in cases where the adopting parent is a *spouse* of a natural parent . . . ."); (2) § 16-1504 ("[c]onsent to adoption is required from . . . [t]he adoptee's *spouse*, if any"); (3) § 16-1505 ("[n]otice of an adoption proceeding shall be served on each of the following persons: . . . the petitioner's *spouse*, if any"); (4) § 16-1506 ("[a]t the time fixed for hearing . . . the *spouse* of the petitioner if a natural parent of the child, must appear before the court . . . ."); and (5) § 16-1509A ("[a]n adoption may be dissolved . . . when the adopting parent was the *spouse* of a natural parent and the marriage of the natural parent and adoptive parent was terminated. . . .") (emphasis added).

7

provisions[4]—none of these could be reasonably interpreted to mean that Jane Doe must be married to Jane Doe I in order to have standing to adopt Jane Doe I's children.

Moreover, because I.C. § 16-1501 is unambiguous, the magistrate's application of a rule of statutory construction—*in pari materia*—was in error. It was unnecessary for the magistrate to apply a rule of statutory construction in a case where the language in question is unambiguous.

In sum, the magistrate's interpretation of Idaho law is simply not supported by the plain text of the statute. In light of the unambiguous language in I.C. § 16-1501 that allows for "any adult person residing in and having residence in Idaho" to adopt "any minor child," and because chapter 15 contains no provisions that limit adoption to those who are married, Idaho's adoption statutes plainly allow Jane Doe to adopt John Doe and John Doe I.

It bears mentioning that this is not a case dealing with same-sex marriage. Rather, it is strictly a case dealing with Idaho's adoption laws. Those laws, including the issue of who may adopt, are set by the Idaho Legislature. The Legislature has imposed no restrictions that would disqualify Jane Doe from seeking to adopt Jane Doe I's children, and the Court will not imply any such restrictions based upon Idaho's marital statutes. We emphasize that Jane Doe's sexual orientation was wholly irrelevant to our analysis. Likewise, it is immaterial in determining whether Jane Doe satisfies the statutory requirements for adoption outlined in chapter 15, a question which must be decided on remand.

## IV.
## CONCLUSION

We reverse the judgment and remand for further proceedings.


Chief Justice BURDICK, and Justices EISMANN and W. JONES CONCUR.


HORTON, J., specially concurring.

Although I join in the Court's decision, I write to highlight a provision that exists in Idaho's adoption statutes that has the potential to negatively affect parents of prospective adoptees, particularly those who do not find favor with their judge, without regard to sexual

---

[4] The provisions discussing marriage are: (1) § 16-1503 ("[a] *married* man . . . cannot adopt a child without the consent of his wife; nor can a *married* woman . . . ."); (2) § 16-1505 ("[n]otice of an adoption proceeding shall be served on . . . [a]ny person who is *married* to the child's mother at the time she executes her consent to the adoption"); (3) § 16-1506 ("[i]n those instances where the prospective adoptive parent is *married* to the birth parent . . . such social investigation shall be completed . . . .") (emphasis added).

orientation or marital status. Idaho Code § 16-1504 identifies those parties who must consent to an adoption.

> 16-1504. NECESSARY CONSENT TO ADOPTION. (1) Consent to adoption is required from:
> . . .
> (b) Both parents or the surviving parent of an adoptee who was conceived or born within a marriage, unless the adoptee is eighteen (18) years of age or older;
> (c) The mother of an adoptee born outside of marriage. . . .

Idaho Code § 16-1506(2), in turn provides that "[a]ny person or persons whose consent is required shall execute such consent in writing, in a form consistent with the provisions of section 16-2005(4). . . ." Significantly, Idaho Code § 16-2005(4) requires that parents consenting to an adoption simultaneously consent to the termination of their parental rights.[5]

Idaho Code § 16-1509 provides that the parental rights of the natural parents are terminated "[u]nless the decree of adoption otherwise provides. . . ." Thus, the judge hearing the adoption petition may, but is not required to, terminate the parental rights of the parent or parents consenting to the adoption. The Legislature has not identified the standards, if any, by which

---

[5] Idaho Code § 16-2005(4) provides, in pertinent part, as follows:

> (4) The court may grant an order terminating the relationship where a consent to termination in the manner and form prescribed by this chapter has been filed by the parent(s) of the child in conjunction with a petition for adoption initiated by the person or persons proposing to adopt the child, or where the consent to termination has been filed by a licensed adoption agency, no subsequent hearing on the merits of the petition shall be held. Consents required by this chapter must be witnessed by a district judge or magistrate of a district court, or equivalent judicial officer of the state, where a person consenting resides or is present, whether within or without the county, and shall be substantially in the following form:

> IN THE DISTRICT COURT OF THE.... JUDICIAL DISTRICT OF THE STATE OF IDAHO, IN AND FOR THE COUNTY OF....
> In the Matter of the termination )
> of the parental rights of )
> ................... )
> ................... )
> 
> *I (we), the undersigned, being the.... of...., do hereby give my (our) full and free consent to the complete and absolute termination of my (our) parental right(s), to the said...., who was born....,...., unto...., hereby relinquishing completely and forever, all legal rights, privileges, duties and obligations, including all rights of inheritance to and from the said....,* and I (we) do hereby expressly waive my (our) right(s) to hearing on the petition to terminate my (our) parental relationship with the said...., and respectfully request the petition be granted.

> DATED:...., 20..
> ................

(Emphasis added.)

judges are to exercise their discretion in determining whether to terminate the parental rights of natural parents when proceeding with adoptions.

The takeaway is simply this: parents wishing for a new spouse or domestic partner to adopt must offer to consent to the termination of their parental rights and hope that the judge doesn't accept the offer.