## IN THE SUPRME COURT OF THE STATE OF IDAHO
### Docket No. 41023

| | |
|---|---|
| J & M CATTLE COMPANY, LLC, an Idaho limited liability company, )<br><br>Plaintiff-Counterdefendant-Respondent, )<br><br>v. )<br><br>FARMERS NATIONAL BANK, )<br><br>Defendant-Counterclaimant-Appellant, )<br><br>and )<br><br>JOHN DOES 1-10, )<br><br>Defendants. ) | Twin Falls, June 2014 Term<br><br>2014 Opinion No. 74<br><br>Filed: August 1, 2014<br><br>Stephen W. Kenyon, Clerk |

_____

Appeal from the District Court of the Fifth Judicial District of the State of Idaho, Twin Falls County. Hon. Randy J. Stoker, District Judge.

The judgment of the district court in giving priority to agister's lien over prior perfected security interests is <u>affirmed</u>.

Coleman, Ritchie & Cluff, Twin Falls, attorneys for appellant. John Ritchie argued.

Cosho Humphrey, LLP, Boise, attorneys for respondent. David M. Penny argued.

_____

W. JONES, Justice

This appeal arises from the sale of dairy cattle subject to Appellant Farmers National Bank's (FNB) perfected security interest and Respondent J&M Cattle Company's (J&M) agister's lien. The net sale proceeds received from the sale of the dairy cattle are insufficient to satisfy both FNB's perfected security interest and J&M's agister's lien. J&M filed an action for declaratory relief to resolve FNB's and J&M's competing interests. Although FNB's perfected security interest has a priority date that predates J&M's agister's lien, the district court

1

determined that J&M's agister's lien had priority over FNB's perfected security interest. The district court entered a final judgment in favor of J&M, and FNB appeals to this Court. We affirm the judgment of the district court.

## I. FACTUAL AND PROCEDURAL BACKGROUND

The facts of this case are undisputed. On July 14, 2006, FNB loaned money to Green River Dairy, LLC, evidenced by promissory notes, security agreements, and UCC-1 and UCC-1F financing statements. FNB again loaned money to Green River Dairy in 2008. These loans were secured by dairy cattle, as well as other assets and collateral of Green River Dairy. Beginning in June of 2011, Green River Dairy delivered possession of some of the dairy cattle subject to FNB's security agreement to J&M. Green River Dairy delivered the dairy cattle to J&M for the purpose of J&M providing food, care, and other services necessary to raise the dairy cattle. FNB's perfected security interest in the dairy cattle has a priority date that predates J&M's rendition of services to the cattle.

Green River Dairy defaulted on its obligation to FNB. On December 12, 2011, FNB filed suit against Green River Dairy to collect on its obligation. J&M was not a party to that litigation. FNB was awarded $2,176,399.21 in an amended judgment and decree of foreclosure, which confirmed that FNB held a security agreement in the dairy cattle. J&M claims an agister's lien in the amount of $751,602.35.

On January 5, 2012, FNB and J&M entered into an agreement for the sale of the dairy cattle and deposit of the net sale proceeds in an interest bearing account without prejudice to either party's claims or waiver of either party's rights, priority, or interest in the dairy cattle. On April 3, 2012, J&M gave notice of the sale of the dairy cattle pursuant to its claim of an agister's lien. The dairy cattle were sold and the net proceeds are held at FNB pursuant to the parties' agreement. As of May 8, 2013, the amount of the deposit was $597,740.70. J&M's agister's lien and the amount owed to FNB pursuant to the judgment each exceed the amount of the deposit.

On July 18, 2012, J&M filed a complaint seeking a declaratory judgment that its agister's lien had priority over FNB's prior perfected security interest. FNB answered and filed a counterclaim asserting that its prior perfected security interest had priority over J&M's agister's lien. On November 29, 2012, J&M moved for partial summary judgment on the issue of priority. The district court determined that J&M's agister's lien had priority over FNB's prior perfected

security interest and therefore J&M was entitled to judgment as a matter of law on the issue of priority.

Following the parties' stipulation for an entry of final judgment, the district court entered a final judgment on May 9, 2013, finding in favor of J&M in the amount of $597,740.70 and dismissing FNB's counterclaim. FNB timely appealed.

## II. ISSUE ON APPEAL

Whether Idaho law provides that an agister's lien has priority over a prior perfected security interest.

## III. STANDARD OF REVIEW

"This Court reviews appeals from a grant of summary judgment using the same standard as is used by the district court ruling on the motion." *Teurlings v. Larson*, 156 Idaho 65, 69, 320 P.3d 1224, 1228 (2014). "Summary judgment is proper 'if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Id.* (quoting Idaho Rule of Civil Procedure 56(c)). Statutory interpretation is a question of law subject to free review. *Sanders v. Bd. of Trs. of Mountain Home Sch. Dist. No. 193*, 156 Idaho 269, 272, 322 P.3d 1002, 1005 (2014).

## IV. ANALYSIS

Idaho Code section 28-9-333(b) states: "A possessory lien on goods has priority over a security interest in the goods unless the lien is created by a statute that expressly provides otherwise." I.C. § 28-9-333(b). As a possessory lien, an agister's lien generally has priority over a prior perfected security interest pursuant to Idaho Code section 28-9-333(b). The issue in this case is whether the statute that creates the agister's lien, Idaho Code section 45-805, "expressly provides otherwise" to alter the priority position of an agister's lien. This Court concludes that it does not.

Idaho Code section 45-805 has three sections. First, section (a) provides:

Every person who, while lawfully in possession of an article of personal property, renders any service to the owner thereof, by labor, or skill, employed for the protection, improvement, safekeeping, or carriage thereof, has a special lien thereon, dependent on possession, for the compensation, if any, which is due him from the owner, for such service. . . .

3

I.C. § 45-805(a).[1] Section (a) also outlines the notice procedures for a person with a personal property lien to sell the property to satisfy the lien. Among other things, it requires the person to send notice to the holder of a perfected security interest in the property. *Id.* In addition, section (a) provides the procedure for a person rendering services to personal property to obtain priority over a prior perfected security interest. It states:

> The person who is about to render any service to the owner of an article of personal property by labor or skill employed for the protection, improvement, safekeeping or carriage thereof may take priority over a prior perfected security interest by, before commencing any such service, giving notice of the intention to render such service to any holder of a prior perfected security interest at least three (3) days before rendering such service. If the holder of the security interest does not notify said person, within three (3) days that it does not consent to the performance of such services, then the person rendering such service may proceed and the lien provided for herein shall attach to the property as a superior lien.

*Id.* In short, a person with a personal property lien may take priority over a prior perfected security interest by providing notice to the holder of that interest and receiving no objection from the holder.

Second, section (b) creates a possessory lien for persons who care for, board, feed, or pasture livestock, also known as an agister's lien. It provides:

> Livery or boarding or feed stable proprietors, and persons pasturing livestock of any kind, have a lien, dependent on possession, for their compensation in caring for, boarding, feeding or pasturing such livestock.

I.C. § 45-805(b). Similar to section (a), section (b) outlines the notice procedures for a person with an agister's lien to sell the property to satisfy the lien. In this respect, section (b) provides:

> If the liens as herein provided are not paid within sixty (60) days after the work is done, service rendered, or feed or pasturing supplied, the person in whose favor such special lien is created may proceed to sell the property at a licensed public livestock auction market, or if the lien is on equines, to sell the animals at a sale offered to the public, after giving ten (10) days' notice to the owner or owners of the livestock and the state brand inspector. The information contained in such notice shall be verified and contain the following:
>
> > (1) The time, place and date of the licensed public livestock auction market, or in the case of equines, the time, place and date of the sale offered to the public;
> >
> > (2) The name, address and phone number of the person claiming the lien;

---

[1] The Court notes that the Legislature has amended Idaho Code section 45-805 since the initiation of proceedings in this case, but these amendments are not dispositive. *See* Ch. 341, § 1, 2012 Idaho Sess. Laws 952; Ch. 18 § 1, 2013 Idaho Sess. Laws 208.

(3) The name, address and phone number of the owner or owners of the livestock upon which the lien has been placed;

(4) The number, breed and current brand of the livestock upon which the lien has been placed; and

(5) A statement by the lienor that the requirements of this section have been met.

I.C. § 45-805(b). In contrast to section (a), section (b) does not outline any specific procedure for an agister's lien to obtain priority over a prior perfected security interest. Section (b) is silent with respect to the priority relationship between an agister's lien and a prior perfected security interest.

Finally, section (c) provides:

Notices provided in subsections (a) and (b) of this section shall be made by personal service or by certified or registered mail to the last known address of the owner or owners and any holder of a prior perfected security interest. The proceeds of the sale must be applied to the discharge of any prior perfected security interest, the lien created by this section and costs; the remainder, if any, must be paid over to the owner.

I.C. § 45-805(c). Due to section (a)'s focus on only personal property liens and section (b)'s silence on agister's lien priority, this last sentence of section (c)—which states that the proceeds of the sale are applied to the prior perfected security interest, to the lien created by this section and costs, and then to the owner—is the relevant language for determining whether Idaho Code section 45-805 "expressly provides otherwise" regarding agister's lien priority over a prior perfected security interest.

Statutory interpretation begins with an examination of the literal words of a statute. *Stonebrook Const., LLC, v. Chase Home Fin., LLC*, 152 Idaho 927, 931, 277 P.3d 374, 378 (2012). If the language of the statute is plain and unambiguous, "courts give effect to the statute as written, without engaging in statutory construction. Only where the language is ambiguous will this Court look to rules of construction for guidance and consider the reasonableness of proposed interpretations." *Id.* (quoting *Curlee v. Kootenai Cnty. Fire & Rescue*, 148 Idaho 391, 398, 224 P.3d 458, 465 (2008)). "A statute is ambiguous where the language is capable of more than one reasonable construction." *Porter v. Bd. of Trs., Preston Sch. Dist. No. 201*, 141 Idaho 11, 14, 105 P.3d 671, 674 (2004). "If the statute is ambiguous, then it must be construed to mean what the legislature intended for it to mean." *City of Sandpoint v. Sandpoint Indep. Highway Dist.*, 139 Idaho 65, 69, 72 P.3d 905, 909 (2003). The Court determines legislative intent by

examining "not only the literal words of the statute, but also the reasonableness of proposed constructions, the public policy behind the statute, and its legislative history." *Id.*

This Court holds that the relevant language in section (c) of Idaho Code section 45-805 is ambiguous regarding agister's lien priority. The section is ambiguous because its statement that the proceeds of the sale are applied to the prior perfected security interest, to the lien, and then to the owner could be reasonably construed in more than one way. This statement could be interpreted as a directive on lien priority in the precise order that each interest is paid with the sale proceeds. Conversely, it could be interpreted as a mere list of potential interests to be paid by the sale proceeds with no regard to priority. Although "any prior perfected security interest" is listed first, section (c) does not necessarily indicate that a prior perfected security interest takes priority over an agister's lien without more express language, such as an explicit statement that one lien has priority over the other, like that stated in Idaho Code section 45-805(a) ("may take priority over a prior perfected security interest").

This ambiguous provision in section (c) does not satisfy the requirement in Idaho Code section 28-9-333(b) that the statute creating the agister's lien "expressly provides otherwise" regarding priority. An ambiguous provision is not an "expressly provided" provision. A provision is express if "manifested by direct and appropriate language." *Sweeney v. Otter*, 119 Idaho 135, 140, 804 P.2d 308, 313 (1990) (quoting BLACK'S LAW DICTIONARY 691 (Rev. 4th ed. 1968)). "Express" is defined as "[c]lear; definite; explicit; plain; direct; unmistakable; not dubious or ambiguous. Declared in terms; set forth in words. Directly and distinctly stated. Made known distinctly and explicitly, and not left to inference." *Saint Alphonsus Diversified Care, Inc. v. MRI Assocs., LLP*, 148 Idaho 479, 488, 224 P.3d 1068, 1077 (2009) (alteration in original) (quoting *Sweeney*, 119 Idaho at 140, 804 P.2d at 313). In *Saint Alphonsus*, the Court interpreted a contract provision, which was required by statute to be express, and the Court reasoned that any doubt as to the meaning of the provision must be resolved against the provision providing an express rule. 148 Idaho at 488, 224 P.3d at 1077. Applying this reasoning, the ambiguity in section (c) must be resolved against it having an express rule on the priority scheme between an agister's lien and a prior perfected security interest. Put another way, section (c) simply cannot expressly provide otherwise on the issue of priority without express language. Therefore, this Court holds that section (c) of Idaho Code section 45-805 lacks an express provision to override the grant of priority to an agister's lien in Idaho Code section 28-9-333(b).

The legislative history of section (c) supports this Court's determination that section (c) is ambiguous on agister's lien priority. Prior to the Legislature's amendment of Idaho Code section 45-805 in 1990, section (c) read:

> Notice shall be made by personal service or by certified or registered mail to the last known address of the owner or owners. The proceeds of the sale must be applied to the discharge of the lien and costs; the remainder, if any, must be paid over to the owner.

Ch. 236, § 1, 1990 Idaho Sess. Laws 672, 673–74. Absent from this earlier version is the reference to "any prior perfected security interest." Without a reference to perfected security interests, this earlier version of Idaho Code section 45-805 offered no basis for the holder of a perfected security interest to satisfy its lien with the sale proceeds. This version of the statute authorized the payment of sale proceeds to only the lien created by Idaho Code section 45-805 and costs and the owner. Thus, the holder of a perfected security interest was required to pursue a claim against the owner to satisfy its lien.

The relevant amendment to Idaho Code section 45-805 occurred in 1990. At the time of these amendments, Idaho Code section 28-9-310[2] provided that a possessory lien had priority over a perfected security interest unless the statute creating the possessory lien "expressly provides otherwise." I.C. § 28-9-310 (West 1990); Ch. 161, § 9-310, 1967 Idaho Sess. Laws 351, 551. The Legislature altered section (c) to read as follows, by adding the underlined language:

> Notices provided in subsections (a) and (b) of this section shall be made by personal service or by certified or registered mail to the last known address of the owner or owners and any holder of a prior perfected security interest. The proceeds of the sale must be applied to the discharge of any prior perfected security interest, the lien created by this section and costs; the remainder, if any, must be paid over to the owner.

Ch. 236, § 1, 1990 Idaho Sess. Laws at 673–74. The Legislature also added the current notice requirements to section (a). Ch. 236, § 1, 1990 Idaho Sess. Laws at 673.

This legislative history of Idaho Code section 45-805 does not resolve the ambiguity in section (c) because the legislative history, too, is ambiguous and capable of more than one reasonable interpretation. The Legislature's addition of "any prior perfected security interest" before "the lien . . . and costs" in section (c) could show that the Legislature intended to give prior perfected security interests priority over agister's liens. This position is supported by the

---

[2] The Legislature replaced Idaho Code section 28-9-310 with Idaho Code section 28-9-333(b) in 2001. Ch. 208, §§ 1–2, 2001 Idaho Sess. Laws 704, 708, 752.

fact that the Legislature also added notice procedures in section (a), which indicates that the Legislature may have intended only for personal property liens to obtain priority over prior perfected security interests. On the other hand, we must assume that the Legislature "was aware of all other statutes and legal precedence at the time the statute was passed." *Druffel v. State, Dep't of Transp.*, 136 Idaho 853, 856, 41 P.3d 739, 742 (2002). As such, the Legislature was aware that a statute had to be express to change agister's lien priority, and therefore the Legislature would have promulgated express language in section (b), as it did in section (a), if it wanted to change the priority scheme. The fact that the Legislature left section (b) untouched, but added specific procedures for priority in section (a), indicates that the Legislature meant to retain agister's lien priority. Looking at the 1990 amendment this way, the addition of "any prior perfected security interest" in section (c) could have been intended to provide a statutory basis for the holder of a perfected security interest to satisfy its lien with the sale proceeds without altering the priority scheme. The amendment simply authorized the holder of a prior perfected security interest be paid by the sale proceeds, thus alleviating the burden on the holder to pursue a separate claim against the owner. Based on the above reasons, this Court finds that the legislative history supports its determination that section (c) is ambiguous and therefore not express.

Finally, this Court's interpretation of section (c) is harmonious with the structure of Idaho Code section 45-805 as a whole. Section (a) provides that a personal property lien is subject to different requirements to obtain priority than the automatic grant of priority in Idaho Code section 28-9-333(b). Section (b) is silent with respect to priority procedures or requirements, indicating that an agister's lien retains the grant of priority from Idaho Code section 28-9-333(b). Section (c)'s inclusion of "any prior perfected security interest" in its list of payable liens recognizes that it is permissible for the holder of a prior perfected security interest to be paid by the sale proceeds, which was not the case before the Legislature's amendment in 1990. Construing Idaho Code section 45-805 in this manner, section (c) allows for the holder of the prior perfected security interest to be paid by the sale proceeds, but leaves issues of priority to be determined by section (a) of Idaho Code section 45-805 or Idaho Code section 28-9-333(b), depending on the type of lien.

In summary, this Court holds that an agister's lien has priority over a prior perfected security interest due to the lack of express language in Idaho Code section 45-805 to alter the position of priority given to an agister's lien by Idaho Code section 28-9-333(b).

## V. CONCLUSION

The judgment of the district court is affirmed. Costs to Respondent.

Justices EISMANN, J. JONES, HORTON and Justice *pro tem* KIDWELL, CONCUR.